COOPER, WHITE & COOPER LLP
EDWARD L. SEIDEL (SBN 200865)
SCOTT M. McLEOD (SBN 242035)
201 California Street, 17th Floor
San Francisco, California 94111
Telephone:    (415) 433-1900
Facsimile:    (415) 433-5530

Attorneys for COMCAST CABLE
COMMUNICATIONS, LLC

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA, FRESNO DIVISION

| | |
|---|---|
| SIERRA RAILROAD COMPANY, a California corporation,<br><br>Plaintiff,<br><br>vs.<br><br>COMCAST CABLE COMMUNICATIONS, LLC, a Delaware limited liability company, Successor in Interest to Comcast Cable Communications, Inc., a surrendered Delaware corporation; and DOES 1 through 50, inclusive,<br><br>Defendants. | CASE NO.<br><br>**NOTICE OF REMOVAL 28 U.S.C. § 1332 (Diversity)** |

TO THE CLERK OF THE ABOVE-ENTITLED COURT:

PLEASE TAKE NOTICE that defendant COMCAST CABLE COMMUNICATIONS, LLC ("Comcast"), a Delaware limited liability company, hereby removes to this Court the state Court action described below:

1.    On June 30, 2021, an action was commenced in the Superior Court of the State of California in and for the County of Tuolumne, entitled *Sierra Railroad Company v. Comcast Cable Communications, LLC,* Case Number CV63918.  Copies of the summons, complaint, civil cover sheet, and Delay Program Information and Setting, are attached hereto collectively as **Exhibit A**.

COOPER, WHITE & COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111-5002

1508347.1

Case No. TBD

NOTICE OF REMOVAL 28 U.S.C. § 1332 (Diversity)

2.  On July 26, 2021, Comcast's registered agent was served with a copy of the complaint and summons.

3.  This action is one which may be removed to this Court by Comcast pursuant to the provisions of 28 U.S.C. § 1441(b) in that it is a civil action between citizens of different states and the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs, because plaintiff alleges damages in excess of $75,000. (Complaint, Prayer, ¶¶ 1, 4.)

4.  Currently and at the time the complaint was filed, Plaintiff is a California corporation with its principal place of business in California and a citizen of the state of California.

5.  Comcast Cable Communications, LLC is a single member Delaware limited liability company. Comcast Holdings Corporation is the sole member Comcast Cable Communications LLC. Comcast Holdings Corporation is a citizen of Pennsylvania because it is incorporated in the state of Pennsylvania and has its principal place of business in the state of Pennsylvania. Accordingly, currently and at the time the complaint was filed, Comcast Cable Communications LLC is and was a citizen of Pennsylvania and complete diversity exists.

DATED:  August 25, 2021                    COOPER, WHITE & COOPER LLP


By: _____
       Scott M. McLeod
       Attorneys for Comcast Cable Communications,
       LLC

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111-5002

1508347.1                                        2                                Case No. TBD
NOTICE OF REMOVAL 28 U.S.C. § 1332 (Diversity)

# EXHIBIT A

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

**NOTICE TO DEFENDANT:** COMCAST CABLE COMMUNICATIONS, LLC, a Delaware
*(AVISO AL DEMANDADO):* limited liability company, Successor in Interest to Comcast
Cable Communications, Inc., a surrendered Delaware corporation; and DOES 1 through
50, inclusive

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
SIERRA RAILROAD COMPANY, a California corporation

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.
¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.

Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.

Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.

| | |
|---|---|
| The name and address of the court is:<br>*(El nombre y dirección de la corte es):* Tuolumne County Superior Court<br>41 W. Yaney Avenue, Second Floor<br>Sonora, CA 95370 | CASE NUMBER: *(Número del Caso):*<br>CV63918<br>BY FAX |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is: *(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Michael H. Wallenstein, Wolf Wallenstein, PC, 11400 W. Olympic Blvd., Suite 700, Los Angeles, CA 90064, (310) 622-1000

| | | |
|---|---|---|
| DATE:<br>*(Fecha)* | 6/30/2021 | Clerk, by Hector X. Gonzalez, Jr., Deputy<br>*(Secretario)* Nancy James   *(Adjunto)* |

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of (specify):
3. ☒ on behalf of (specify): Comcast cable Communications LLC a Delaware Limited Liability Company
   under: ☐ CCP 416.10 (corporation)   ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership)   ☐ CCP 416.90 (authorized person)
   ☒ other (specify): LLC
4. ☒ by personal delivery on (date):

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courts.ca.gov

Page 1 of 1

1   MICHAEL H. WALLENSTEIN (SBN 213018)
    mwallenstein@wolfwallenstein.com
2   **WOLF WALLENSTEIN, PC**
    11400 West Olympic Boulevard, Suite 700
3   Los Angeles, California 90064
    Telephone: (310) 622-1000
4   Facsimile: (310) 457-9087

5   Attorneys for Plaintiff, Sierra Railroad Company

**FILED**

JUN 3 0 2021

**Superior Court of California**
**County of Tuolumne**
By: ~~Nancy James~~ Clerk

6

7

8              SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                    FOR THE COUNTY OF TUOLUMNE

10

11  SIERRA RAILROAD COMPANY, a
    California corporation,                    CASE NO.: CV63918

12                                            **COMPLAINT FOR:**
                   Plaintiff,
13                                            **(1) BREACH OF CONTRACT**
         vs.                                  **(2) BREACH OF IMPLIED COVENANT OF**
14                                            **    GOOD FAITH AND FAIR DEALING**
    COMCAST CABLE COMMUNICATIONS,             **(3) CONTINUING TRESPASS**
15  LLC, a Delaware limited liability company, **(4) CONTINUING NUISANCE**
    Successor in Interest to Comcast Cable     **(5) OPEN BOOK ACCOUNT**
16  Communications, Inc., a surrendered Delaware **(6) DECLARATORY RELIEF**
    corporation; and DOES 1 through 50, inclusive,
17
                                              BY
18                Defendants.                 FAX

19

20

21

22

23

24

25

26

27

28
                            COMPLAINT

WOLF WALLENSTEIN, PC
11400 WEST OLYMPIC BLVD., SUITE 700
LOS ANGELES, CALIFORNIA 90064

1   Plaintiff SIERRA RAILROAD COMPANY ("Sierra" or "Plaintiff") hereby complains against
2   defendant COMCAST CABLE COMMUNICATIONS, LLC, successor in interest to Comcast Cable
3   Communications, Inc., and Does 1 through 50 inclusive, (together, Comcast or "Defendants") and
4   alleges as follows:

5                                    **INTRODUCTION**

6       1.    Sierra Railroad Company is a private common carrier short-line railroad that, like all
7   private property owners, has a right to be free from the unlawful use and interference of its property
8   by third parties. For several years now, defendant Comcast, a subsidiary of the Comcast Corporation,
9   the American telecommunications conglomerate that also owns NBC-Universal and other major
10  entities, has been unlawfully occupying and interfering with Sierra's rail corridors and refusing to
11  remove its facilities and to pay contract amounts owed after terminating some 17 separate license
12  agreements that govern those facilities. This case seeks to right those wrongs.

13      2.    In early 2002, Sierra licensed a number of wireline crossings to Comcast's predecessor,
14  with Comcast expressly agreeing to assume all of the licensee's obligations shortly thereafter. In or
15  about 2013, Comcast ceased paying for many of the crossings while still using them and wrongly
16  claiming to have an independent right to do so. Shortly thereafter, and without any notice to Sierra,
17  and without regard to critical railroad safety standards, Comcast unlawfully installed additional
18  wireline crossings on Sierra's active railroad corridor; all without compensation to, or coordination
19  with, Sierra. When confronted with its unlawful activity, and its failure to abide by the existing
20  licenses, Comcast lulled Sierra by claiming to be interested in resolving the dispute in an amicable
21  manner and avoiding litigation. Yet no resolution has come. Litigation is now necessary.

22                                   **THE PARTIES**

23      3.    Plaintiff Sierra Railroad Company is a California corporation in good standing, with
24  its principle place of business in Davis, California, and is doing, and is qualified to do, business in
25  California. Sierra owns the property that is the subject of this action, which is in Tuolumne County.

26      4.    Sierra is informed and believes and, based upon such information and belief, alleges
27  that Comcast is a Delaware limited liability company, with its principal place of business in
28  Philadelphia, Pennsylvania, and is qualified to do, and does, substantial business in California. Sierra

*WOLF WALLENSTEIN, PC*
*11400 WEST OLYMPIC BLVD., SUITE 700*
*LOS ANGELES, CALIFORNIA 90064*

WOLF WALLENSTEIN, PC
11400 WEST OLYMPIC BLVD., SUITE 700
LOS ANGELES, CALIFORNIA 90064

1  is informed and believes and, based upon such information and belief, alleges that Comcast Cable

2  Communications, LLC is the successor in interest to Comcast Cable Communications, Inc., a

3  surrendered Delaware corporation.

4       5.    Sierra does not know the true names of DOES 1 through 50, inclusive, and therefore

5  sues them by those fictitious names. The names, capacities and relationships of Does 1 through 50

6  will be alleged by amendment to this complaint when the same are known.

7       6.    Sierra is informed and believes and, based upon such information and belief, alleges

8  that at all times mentioned herein Does 1 through 50, inclusive, were the successors, general partners,

9  managers, limited partners, agents, employees, assignees, transferees, grantees, associates, agents,

10  employees, predecessors, parent companies, affiliates, subsidiaries, sister companies, and/or alter egos

11  of each of the remaining defendants and, in doing the things herein alleged, were acting within the

12  scope of such relationship, agency and/or employment.

13  **VENUE AND JURISDICTION**

14       7.    Venue and jurisdiction are proper in the above-captioned County because: (i) the action

15  involves contracts for licensing interests located within said County, (ii) Comcast has substantial

16  contacts and business dealings in said County and otherwise in the State of California, and (iii) the

17  relief requested is within the jurisdictional authority of this Court.

18  **SUMMARY OF THE CASE**

19       8.    For almost as long as there have been railroads, there have been pipelines, wirelines,

20  telegraph and telephone lines, and other users of railroad rights-of-way who enjoy the benefits of

21  dealing with a single property owner – the railroad – for multiple encroachments.  These corridor

22  users occupy the railroad rights-of-way under licenses, easements, and other contractual rights granted

23  to them by the railroads.  In turn, and in exchange for providing access to their corridors, railroads

24  necessarily require numerous terms and provisions that ensure the railroads' ability to continue their

25  important public and private operations, while also protecting the safety of railroad personnel and the

26  adjacent property owners from the potential hazards of unregulated shared use of a railroad corridor.

27       9.    This case involves 17 such railroad crossing license agreements by which Comcast

28  entered on to and occupied Sierra's railroad corridors in Tuolumne County.  All of the subject licenses

1  require Comcast – for obvious safety and operational purposes – to remove their facilities upon

2  termination of a license. When a dispute arose over the compensation to be paid by Comcast for the

3  licensing rights, Comcast terminated all 17 licenses while still owing tens of thousands of dollars in

4  unpaid annual license fees and late fees.

5       10.    Despite terminating and disavowing the licenses, and ignoring Sierra's demands

6  therefor, Comcast refused and continues to refuse to remove its facilities from Sierra's property and

7  has continuously refused to pay the back due License and late fees.  Comcast's facilities now

8  unlawfully occupy Sierra's railroad corridors in breach of the Licenses, and constituting a continuing

9  nuisance and trespass, while threatening the safety of railroad workers and property owners adjacent

10  to the rail corridor.

11       11.    Comcast has also, unlawfully and without permission from Sierra, entered on to

12  Sierra's Tuolumne County property and installed additional cable wire facilities in at least nine

13  locations.  Comcast continues to operate and maintain these unlawful and undocumented

14  encroachments notwithstanding Sierra's repeated demands to remove them or to enter into license

15  agreements to properly document and regulate them.

16  **GENERAL ALLEGATIONS**

17       12.    Sierra is a common carrier short line railroad that has been in operation in some form

18  since 1897. Currently, Sierra owns more than 100 miles of railroad corridors and operates tracks and

19  appurtenances thereon along various branches in Mendocino, Stanislaus, Yolo, and Tuolumne

20  Counties.  It provides short-haul transportation services with interchanges to the major western Class

21  1 railroads – Union Pacific and BNSF – for interstate and transcontinental shipping.  The portions of

22  Sierra's railroad corridor at issue in this case are in Tuolumne County.

23       13.    On or about March 8, 2002, AT&T Broadband ("AT&T") entered into 20 separate,

24  and essentially identical, Wireline Crossing Agreements with Sierra, of which 17 are at issue in this

25  case (the "Licenses"). Under each of these Licenses, AT&T agreed, among other things, to pay an

26  annual license fee of $1,000 to Sierra in exchange for the non-exclusive right to "construct, maintain,

27  repair, renew [etc.]" cable television wirelines across Sierra's Tuolumne County corridors at various

28  locations, either above-ground or subsurface.

WOLF WALLENSTEIN, PC
11400 WEST OLYMPIC BLVD., SUITE 700
LOS ANGELES, CALIFORNIA 90064

14.     On or about February 2003, AT&T assigned the Licenses to Comcast which expressly assumed the obligations thereunder.  A true and correct copy of the Assumption Agreement and Sierra's consent thereto is attached hereto as **EXHIBIT A**. As with AT&T, and until it stopped paying for certain Licenses, Comcast paid its annual License fees collectively for all 17 Licenses.

15.     The subject Licenses are known to the parties by the following identifiers: SERA -30102, -30202, -30302, -30402, -30502, -30602, -30702, -30802, -30902, -31002, -31102, -31202, -31302, -31402, -31502, -31602, and -32002.  As a typical example of the Licenses, a true and correct copy of SERA-31502 is attached hereto as **EXHIBIT B.**

16.     As relevant here, the Licenses each impose the following additional provisions and obligations on Comcast:

a.     Comcast's rights are subordinate to Sierra's right to occupy and use all of its property for any purpose (Section 1.1(A));

b.     Upon termination of any License, Comcast must promptly remove its equipment, at Comcast's own cost and risk; Comcast must also pay any license fees and late fees due at the time of termination (§14);

c.     Comcast "shall not at any time . . . *claim any right, title or interest* in or to [Sierra]'s property" (§17.1);

d.     Comcast shall owe interest accruing at the rate of 12% per annum on all unpaid annual license fees (§12.4); and

e.     A number of additional provisions that ensure safe and efficient railroad operations and mitigate the potential hazards of the shared use of an active railroad corridor, including (i) §1.3 (requiring consent for additional facilities); (ii) §1.5 (eliminating interference with safe railroad operations); (iii) §3.5 (requiring repairs to the wireline facilities when needed to facilitate rail operations); (iv) §4.1 (requiring Comcast to obtain proper governmental permits); §§5.1 and 5.2 (ensuring proper markers for subsurface installations); §6.1 (requiring relocation at Comcast's expense when needed for railroad purposes); §7.2 (requiring proper aerial clearances above the tracks); §8.1 (requiring relocation to prevent interference with rail operations); §9 (allocating risks and liabilities); §10 (requiring proper insurance coverage);

WOLF WALLENSTEIN, PC
11400 WEST OLYMPIC BLVD., SUITE 700
LOS ANGELES, CALIFORNIA 90064

WOLF WALLENSTEIN, PC
11400 WEST OLYMPIC BLVD., SUITE 700
LOS ANGELES, CALIFORNIA 90064

1     and §11 (requiring Comcast to employ flaggers and other safety personnel when working on
2     the rail corridor).

3          17.     Beginning in approximately 2013, Comcast began refusing to pay the annual license
4     fees for some of the Licenses.  The parties attempted to resolve this dispute over the ensuing two
5     years.  During that time Comcast repeatedly claimed that it needed more time to research the situation
6     but ultimately did not propose any resolution with Sierra.

7          18.     In the interim, Comcast unlawfully entered on to Sierra's property and installed nine
8     new wireline facilities at various locations, without requesting Sierra's permission and without
9     entering into appropriate license agreements for any of these new unauthorized encroachments.

10         19.     On March 16, 2015, Comcast purported to unilaterally terminate the Licenses. At the
11    time of the purported termination, Comcast owed Sierra more than $128,000 in License fees and late
12    fees, all of which became immediately due and payable – under Section 14 of the Licenses – upon
13    Comcast's purported termination thereof.

14         20.     Notwithstanding Comcast's purported termination of the Licenses, Comcast failed to
15    remove its facilities from Sierra's rail corridors as required under the Licenses. By March 2016, with
16    Comcast still making use of, and generating revenue from, its facilities occupying Sierra's property,
17    the amount of back due fees had grown to more than $204,000.

18         21.     At that time, after Comcast again reiterated its intent to terminate the Licenses, Sierra
19    accepted Comcast's termination and demanded that Comcast remove its facilities and pay all rents
20    due as of that date.  A true and correct copy of that letter, dated March 31, 2016, is attached hereto as
21    **EXHIBIT C**. Comcast refused to do either.

22         22.     Notwithstanding this demand, over the ensuing years Comcast promised again and
23    again to *try* to reach a resolution of this dispute so it could maintain its facilities on Sierra's rail
24    corridors. For example, in July 2016, Comcast's attorney assured Sierra that "Comcast is prepared to
25    observe and respect property rights that are adequately brought to our attention" and requested
26    additional information from Sierra so that the parties "can mutually identify any locations between
27    them of unresolved cable crossing rights and obligations, and enable [the parties] to confirm orderly
28    and customary agreements and arrangements for continued service."  Indeed, Comcast claimed it

1   didn't even know where its facilities were and requested such information from Sierra.

2       23.     Based on Comcast's assurances and the fact that Comcast is a major company with

3   substantial assets, Sierra reasonably relied on Comcast's representations and did not, at that time

4   pursue a judicial remedy.  Instead, Sierra provided the additional information to Comcast including

5   the location – by latitudinal and longitudinal coordinates – of each location governed by the Licenses,

6   as well as copies of all of the Licenses at issue, even though this information was plainly in Comcast's

7   records.  A true and correct copy of the spreadsheet identifying the location of all 26 encroachments

8   is attached hereto as **EXHIBIT D**.

9       24.     Nevertheless, Comcast's facilities remained on Sierra's property, including at the 17

10  licensed properties and at the nine unauthorized locations while, at the same time, Comcast continued

11  to falsely promise Sierra that it was trying to resolve the dispute. For example, in October 2018,

12  Comcast's in-house counsel again asked for additional information from Sierra.  Believing that by

13  designating a new representative to resolve this dispute Comcast would more actively pursue a

14  resolution, Sierra continued to forbear from bringing an action to enforce the Licenses.  Accordingly,

15  Sierra promptly responded agreeing to once again provide information while indicating that it was

16  preparing to file legal action.

17      25.     In response, on October 9, 2018, Comcast's counsel e-mailed her assurances again,

18  stating "I will set up a call to see if we can get this resolved as soon as I review the documentation.  I

19  apologize if this is a duplicative request." Sierra again provided the information requested by Comcast.

20  The parties then exchanged numerous additional e-mails in an attempt to resolve the dispute extending

21  into April of 2019.  A true and correct copy of the emails in the aforementioned exchange is attached

22  hereto as **EXHIBIT E.**

23      26.     Ultimately, Comcast essentially dropped any effort to rectify the situation.  Based on

24  Comcast's false assurances that it would work in good faith to resolve the disputes, as set forth above,

25  and because Sierra reasonably relied on such assurances as set forth above, Sierra alleges that Comcast

26  is estopped from asserting the defense of the statute of limitations with respect to its obligations under

27  the Licenses.

28      27.     Comcast's  facilities  at  the  17  License  locations  and  at  the  nine  unauthorized

WOLF WALLENSTEIN, PC
11400 WEST OLYMPIC BLVD., SUITE 700
LOS ANGELES, CALIFORNIA 90064

7

1    encroachment locations continue, as of the date of this Complaint, to occupy and use Sierra's property

2    without Sierra's permission and despite Sierra's demands to remove such facilities.

3                              **FIRST CAUSE OF ACTION**

4                         **Breach of Contracts – As to All Licenses**

5                              **(Against all Defendants)**

6        28.    Sierra realleges and incorporates herein by reference the allegations set forth in

7    paragraphs 1 through 27, inclusive, as though fully set forth herein.

8        29.    The 17 subject Licenses are essentially identical except for the location of the

9    respective licensed properties and other identifying information.   All of the 17 Licenses were

10   terminated as set forth herein, either on March 16, 2015, or effective as of March 31, 2016.

11       30.    Section 14.1 of each of the Licenses provides that upon termination "[a]ll rights which

12   [Comcast] may have hereunder shall cease and end."   That section also provides that termination of

13   the License "shall not affect . . . liabilities which may have arisen or accrued hereunder, and which at

14   the time of termination . . . have not been satisfied."

15       31.    Accordingly, as of the date of termination, all unpaid license fees and late fees became

16   immediately due and payable. As of March 16, 2015, Comcast owed $128,191.36 under the Licenses.

17   As of March 31, 2016, Comcast owed $204,352.88 under the Licenses.

18       32.    Defendants breached the Licenses and each of them by refusing and failing to pay

19   when due, and continuing to fail and refuse to pay, any portion of the amount owed as of the effective

20   termination date.

21       33.    Section 14.2 of each of the Licenses provides that "[w]ithin thirty (30) days after

22   termination . . . [Comcast], at its sole risk and expense, shall (a) remove [its facilities] from the

23   Property of [Sierra] . . . (b) restore property of [Sierra] in a manner satisfactory to [Sierra], and (c)

24   reimburse [Sierra] all loss, cost or expense of [Sierra] resulting from such removal."

25       34.    Defendants breached the Licenses, and each of them, again by refusing and failing to

26   remove the facilities subject to the Licenses and by continuing to fail and refuse to remove any such

27   facilities and to restore Sierra's property in a manner satisfactory to Sierra.

28       35.    Section 17.1 of each of the Licenses provides that Comcast "Shall not at any time . . .

WOLF WALLENSTEIN, PC
11400 WEST OLYMPIC BLVD., SUITE 700
LOS ANGELES, CALIFORNIA 90064

1    claim any right, title or interest in or to [Sierra]'s property occupied by [Comcast]'s Wireline . . ."

2         36.    Defendants breached the Licenses, and each of them, again and continue to be in breach

3    of the Licenses by claiming to have an independent right to occupy Sierra's property without entering

4    into or being subject to any contractual agreement, or receiving Sierra's permission therefor.

5         37.    Sierra has performed all of the terms, conditions and covenants required of it under

6    each and every License, except for those which were excused or waived or which Sierra has been

7    prevented from performing.

8         38.    As a direct and proximate cause of Defendants' breaches of the Licenses, as alleged

9    herein, Sierra has been damaged in the amount of the unpaid License and late fees with interest

10   thereon at the contract rate, and in an amount equal to the fair market rental value of the licensed

11   properties upon which Defendants are still encroaching, and in other ways according to proof at trial.

12   **SECOND CAUSE OF ACTION**

13   **Breach of Implied Covenant of Good Faith and Fair Dealing**

14   **(Against All Defendants)**

15        39.    Sierra realleges and incorporates herein by reference the allegations set forth in

16   paragraphs 1 through 38, inclusive, as though fully set forth herein.

17        40.    In every contract there is an implied covenant of good faith and fair dealing by each

18   party not to do anything that will deprive the other party of the benefits of the contract, and a breach

19   of this covenant by failure to deal fairly or in good faith gives rise to an action for damages.

20        41.    Notwithstanding the existence and validity of all 17 Licenses, Comcast, during the

21   terms thereof, disavowed the Licenses wrongly claiming an independent right to occupy and use

22   Sierra's property without its permission and without obligation to compensate Sierra for such

23   occupancy and use.  Comcast refused to pay the license fees due under contracts based on such

24   incorrect assertions while, at the same time, enjoying the benefits of the Licenses without their

25   burdens yet declining to terminate them.

26        42.    When Comcast finally did terminate the Licenses Comcast continued to wrongly

27   assert a right to occupy and use Sierra's property without compensation or adherence to any License

28   terms, and refused to remove its facilities from Sierra's property based on such incorrect assertions.

WOLF WALLENSTEIN, PC
11400 WEST OLYMPIC BLVD., SUITE 700
LOS ANGELES, CALIFORNIA 90064

1    43.    In making such incorrect assertions and remaining in occupation of Sierra's property

2    without compensation or cooperation with necessary railroad safety and security requirements,

3    Comcast deprived Sierra of the benefits of the Licenses and did so acting unfairly and in bad faith.

4    44.    Such breaches of the implied covenants of good faith and fair dealing in each of the

5    Licenses caused damages to Sierra in the form of lost License and late fees, the reasonable rental

6    value of the Licensed Property, and in other forms in amounts according to proof at trial.

7    **THIRD CAUSE OF ACTION**

8    **Continuing Nuisance**

9    **(Against all Defendants)**

10    45.    Sierra realleges and incorporates herein by reference the allegations set forth in

11    paragraphs 1 through 44, inclusive, as though fully set forth herein.

12    46.    Defendants' unlawful uses of, and interference with Sierra's free use and enjoyment

13    of its property at the 17 License locations and at the 9 unauthorized encroachment locations, as alleged

14    herein, constitute a nuisance under Civil Code section 3479. Without limitation, Defendants'

15    unauthorized and unregulated use of Sierra's property threatens to interfere with the safe and efficient

16    use of the property for railroad purposes and in a manner that interferes with Sierra's common carrier

17    obligations, and threatens the safety of railroad personnel and persons residing and/or working in the

18    vicinity of the railroad.

19    47.    This nuisance can be readily abated by Defendants removing their facilities at all 26

20    locations, and by enjoining Defendants from entering on to and using and interfering with Sierra's

21    property in the future, and by restoring Sierra's property to a satisfactory condition.

22    48.    Sierra is informed and believes, and on that basis alleges that, unless restrained or

23    enjoined by order of this court, Defendants will continue to engage in the activity constituting the

24    nuisance as described herein. This ongoing conduct will result in irreparable harm to Sierra by,

25    without limitation, impairing Sierra's free and full use of its property in the manner it so chooses and

26    by interfering with Sierra's railroad operations in an unregulated manner and by preventing the

27    economic use of the encroached property by other third party utilities and users.

28    49.    Sierra has no adequate remedy at law to redress all of the injuries that it has suffered

WOLF WALLENSTEIN, PC
11400 WEST OLYMPIC BLVD., SUITE 700
LOS ANGELES, CALIFORNIA 90064

1    and will continue to suffer in the future if Defendants' conduct, as described herein, is not abated and

2    enjoined.

3          50.     In addition, the existence of the nuisance, as described herein has caused Sierra

4    damages in the form of the reasonable rental value of the property underlying the Easements during

5    the three years prior to the date of this Complaint, and in other ways, all in an amount according to

6    proof at trial.

7                              **FOURTH CAUSE OF ACTION**

8                                   **Continuing Trespass**

9                                 **(Against all Defendants)**

10         51.     Sierra realleges and incorporates herein by reference the allegations set forth in

11   paragraphs 1 through 50, inclusive, as though fully set forth herein.

12         52.     Defendants intentionally and unlawfully entered on to Sierra's property and installed

13   cable television facilities and appurtenances at each of the nine unauthorized encroachment locations

14   and have remained on the property and maintained such facilities and appurtenances for at least the

15   last three years all without Sierra's permission or consent.

16         53.     In addition, for at least the last three years, Defendants have intentionally, unlawfully,

17   and consistently occupied and used Sierra's property by maintaining, at each of the locations

18   previously subject to the Licenses, cable television facilities and appurtenances all without Sierra's

19   permission or consent.

20         54.     Sierra has been harmed by Defendants' unlawful entries on to, and uses of Sierra's

21   property, and by Defendants' impairment of Sierra's exclusive use thereof.

22         55.     By reason of Defendants' conduct, Sierra has been deprived of the use and exclusive

23   possession of the affected property for a period of three years prior to the date of this Complaint, to

24   Sierra's damage in an amount equal to the reasonable rental value of the affected property during the

25   three years prior to the date of this Complaint, and Sierra has been damaged in other ways according

26   to proof at trial.

27         56.     Defendants' unlawful acts as described herein can be readily abated by removing their

28   facilities at all 26 locations, and by restoring Sierra's property to a satisfactory condition.

WOLF WALLENSTEIN, PC
11400 WEST OLYMPIC BLVD., SUITE 700
LOS ANGELES, CALIFORNIA 90064

WOLF WALLENSTEIN, PC
11400 WEST OLYMPIC BLVD., SUITE 700
LOS ANGELES, CALIFORNIA 90064

**FIFTH CAUSE OF ACTION**

**Open Book Account**

**(Against All Defendants)**

57.     Sierra realleges and incorporates herein by reference the allegations set forth in paragraphs 1 through 38, inclusive, as though fully set forth herein.

58.     Subject to Defendants' estoppel to assert a defense of the statute of limitations as set forth above, within the applicable period preceding the commencement of this action, at the Defendants' special instance and request, Defendants became indebted to Sierra for a balance due on a book account as defined by §337a of the California Code of Civil Procedure for the License fees and late fees due under the Licenses. No part of said sum has been paid, although demand has been made therefor, and there is now due, owing, and unpaid the sum of $204,352.88, together with interest at the contract rate of 12% per annum from no later than March 31, 2016.

**SIXTH CAUSE OF ACTION**

**Declaratory Relief**

**(Against all Defendants)**

59.     Sierra realleges and incorporates herein by reference the allegations set forth in paragraphs 1 through 58, inclusive, as though fully set forth herein.

60.     There is an actual and present controversy between Sierra and Defendants regarding, among other things, (i) Defendants' obligations to enter into written agreements with Sierra – such as the Licenses – as a prerequisite to entering on to and using Sierra's property to construct and maintain their cable television facilities and appurtenances; (ii) the amounts owed by Defendants to Sierra under the Licenses upon termination; (iii) the effective date of that determination.

61.     Sierra contends that: (i) Defendants may not lawfully enter on to nor use Sierra's property for any purpose without entering into written agreements therefor with Sierra to ensure appropriate compensation is paid for such use and to protect the operations of the railroad and persons living and/or working on, or in the vicinity of, the railroad, among other things; (ii) upon termination of the Licenses Defendants owed and still owe Sierra $204,352.88 plus interest thereon at the contract rate; and (iii) that the effective date of the termination of the Licenses was March 31, 2016.

1    62.    Sierra is informed and believes, and on that basis alleges that Defendants disagree with

2    all of the aforementioned contentions.

3    63.    Sierra seeks a judicial determination as to the respective rights and duties under the

4    respective Licenses and with respect to Defendants' ongoing unauthorized use of Sierra's property.

5    Specifically, Sierra seeks a judicial determination that: (i) Defendants have no legal right to enter on

6    to or to occupy or use Sierra's property for any purpose without the express written consent of Sierra

7    and upon terms and conditions satisfactory to Sierra; (ii) Defendants' current use and occupancy of

8    Sierra's property is unlawful and unauthorized; (iii) Defendants are obligated to immediately remove

9    their facilities and appurtenances from Sierra's property and to restore such property to a condition

10    satisfactory to Sierra; (iv) Defendants owe Sierra the sum of $204,352.88 plus interest at the contract

11    rate of 12% per annum, accruing from March 31, 2016.

12    64.    In conjunction therewith, Sierra also seeks an order compelling Defendants to pay the

13    amount determined to be owed under the Licenses, plus prejudgment interest at the contract rate, and

14    compelling Defendants to immediately remove their facilities and appurtenances from Sierra's

15    property and to restore such property to a condition satisfactory to Sierra.

16    WHEREFORE, Sierra prays for judgment against the Defendants as follows:

17    1.    For damages and/or payment in the amount of $204,352.88 plus prejudgment interest

18        at the contract rate;

19    2.    For additional damages in an amount equal to the fair market rental value, for the

20        three-year period immediately preceding the filing of this Complaint, of the property

21        occupied by Defendants' facilities and appurtenances at the 26 locations identified

22        herein and in an amount sufficient to reimburse Sierra for the cost to repair any

23        physical damage thereto caused by Defendants;

24    3.    For a permanent injunction (i) enjoining Defendants from entering on to and/or using

25        or occupying Sierra's property without express written permission from Sierra and on

26        terms and conditions satisfactory to Sierra; and (ii) requiring Defendants to remove

27        their facilities at all 26 locations identified herein and at any other location hereafter

28        identified and to restore Sierra's property to a condition satisfactory to Sierra;

WOLF WALLENSTEIN, PC
11400 WEST OLYMPIC BLVD., SUITE 700
LOS ANGELES, CALIFORNIA 90064

13
COMPLAINT

4.      For a judicial determination that: (i) Defendants have no legal right to enter on to, or to occupy or use, Sierra's property for any purpose without the express written consent of Sierra upon terms and conditions satisfactory to Sierra; (ii) Defendants' current use and occupancy of Sierra's property is unlawful and unauthorized; (iii) Defendants are obligated to immediately remove their facilities and appurtenances from Sierra's property and to restore such property to a condition satisfactory to Sierra; (iv) Defendants owe Sierra the sum of $204,352.88 plus interest at the contract rate accruing from March 31, 2016.

5.      For an order compelling Defendants to pay the amount determined to be owed under the Licenses, plus prejudgment interest at the contract rate, and compelling Defendants to immediately remove their facilities and appurtenances from Sierra's property and to restore such property to a condition satisfactory to Sierra;

6.      For costs of suit;

7.      For such other and further relief as the court deems appropriate.

DATED: June 29, 2021             **WOLF WALLENSTEIN, PC**

By:_____
           Michael H. Wallenstein
           Attorneys for Plaintiff
           Sierra Railroad Company

**WOLF WALLENSTEIN, PC**
11400 WEST OLYMPIC BLVD., SUITE 700
LOS ANGELES, CALIFORNIA 90064

14
COMPLAINT

**EXHIBIT A**



SERA Form 3058 – Page 1
November 25, 2002
Agreement No.:  as listed on schedule A

# ASSUMPTION AGREEMENT

The Agreement made by **AT&T Broadband, LLC,** with the SERA and presently the facilities provided for in that Agreement are utilized by the undersigned Assignee, **Comcast Cable Communications, Inc.,** whose mailing address **1500 Market Street, Philadelphia, PA 19102,** the certain license listed on the attached Schedule A, and the consent of Licensor (Sierra Railroad Company) to assumption.  Assignee hereby assumes and covenants and agrees to be bound by, carry out, perform, observe and abide by, all the terms, obligations and conditions of said Agreement, as if an original party thereto, arising on or after **November 25, 2002,** the **"Effective Date".**

$15,000

In consideration for this Assumption and Consent, Assignee agrees to pay Licensor $~~28,000~~ U. S. Dollars to cover the administration and preparation fee, payment of which is attached hereto.

In further consideration for this Assumption and Consent, Assignee agrees that fees set forth in said Agreement shall be as indicated on Schedule A.  All other items contained in said Agreement shall remain as if republished herein.

Notwithstanding the Existing Terms of said Agreement, Assignee understands and agrees that the term thereof shall be subject to the following:  Said Agreement shall continue in effect unless and until terminated by thirty (30) days written notice by registered or certified mail from either party hereto to the other.

IN WITNESS, Assignee has caused these presents to be executed by its duly authorized officer this 20ᵗʰ day of February , ~~2002.~~ 2003.

WITNESS (Assignee):

*Michelle Harding*
Michelle Harding
Contracts mgr.

Comcast Cable Communications, Inc.

By: _____

Print Name: DONALD J GOULD

Print Title: VP Engineering Western Division

Tax Identification No.:  23-2175755

Who, by the execution hereof, affirms that he/she has the authority to do so and to bind the Assignee to the terms and conditions of this Agreement.

SERA Form 3058 – Page 2
November 25, 2002
Agreement No.:  as listed on schedule A

## CONSENT TO ASSIGNMENT

In consideration of the above Licensor hereby consents and agrees to the foregoing Assignment of Agreement on Schedule A to Assignee, and Assignee's Assumption thereof, as of November 25, 2002, the Effective Date.

This Consent shall not be construed by any party as a waiver or consent to any further or subsequent sublease, assignment or transfer of the rights, duties and/or obligations, in whole or in part, of said Agreements.

IN WITNESS WHEREOF, Licensor has caused these presents to be executed by its duly authorized officer this _13TH_ day of _MAY_, 2003.

WITNESS:

Sierra Railroad Company

By: _____
John A. Pustinger
Director-Real Estate

## ASSUMPTION SCHEDULE A
### November 25, 2002

Assignor: AT&T Broadband, LLC                                   Assignee: Comcast Cable Communications, Inc.

| Contract Number | Contract Date | Facility Type | Location | Effective Date | Annual Fees | Annual Maintenance Fee | Payable | Lump Sum |
|---|---|---|---|---|---|---|---|---|
| SERA-030102 | 03/08/2002 | Wireline Crossing | Jamestown, CA | 03/08/2003 | $1,000.00 | $0.00 | Annually | N/A |
| SERA-030202 | 03/08/2002 | Wireline Crossing | Jamestown, CA | 03/08/2003 | $1,000.00 | $0.00 | Annually | N/A |
| SERA-030302 | 03/08/2002 | Wireline Crossing | Jamestown, CA | 03/08/2003 | $1,000.00 | $0.00 | Annually | N/A |
| SERA-030402 | 03/08/2002 | Wireline Crossing | Jamestown, CA | 03/08/2003 | $1,000.00 | $0.00 | Annually | N/A |
| SERA-030502 | 03/08/2002 | Wireline Crossing | Jamestown, CA | 03/08/2003 | $1,000.00 | $0.00 | Annually | N/A |
| SERA-030602 | 03/08/2002 | Wireline Crossing | Jamestown, CA | 03/08/2003 | $1,000.00 | $0.00 | Annually | N/A |
| SERA-030702 | 03/08/2002 | Wireline Crossing | Jamestown, CA | 03/08/2003 | $1,000.00 | $0.00 | Annually | N/A |
| SERA-030802 | 03/08/2002 | Wireline Crossing | Jamestown, CA | 03/08/2003 | $1,000.00 | $0.00 | Annually | N/A |
| SERA-030902 | 03/08/2002 | Wireline Crossing | Jamestown, CA | 03/08/2003 | $1,000.00 | $0.00 | Annually | N/A |
| SERA-031002 | 03/08/2002 | Wireline Crossing | Jamestown, CA | 03/08/2003 | $1,000.00 | $0.00 | Annually | N/A |
| SERA-031102 | 03/08/2002 | Wireline Crossing | Jamestown, CA | 03/08/2003 | $1,000.00 | $0.00 | Annually | N/A |
| SERA-031202 | 03/08/2002 | Wireline Crossing | Jamestown, CA | 03/08/2003 | $1,000.00 | $0.00 | Annually | N/A |
| SERA-031302 | 03/08/2002 | Wireline Crossing | Jamestown, CA | 03/08/2003 | $1,000.00 | $0.00 | Annually | N/A |
| SERA-031402 | 03/08/2002 | Wireline Crossing | Jamestown, CA | 03/08/2003 | $1,000.00 | $0.00 | Annually | N/A |
| SERA-031502 | 03/08/2002 | Wireline Crossing | Jamestown, CA | 03/08/2003 | $1,000.00 | $0.00 | Annually | N/A |
| SERA-031602 | 03/08/2002 | Wireline Crossing | Jamestown, CA | 03/08/2003 | $1,000.00 | $0.00 | Annually | N/A |
| SERA-031702 | 03/08/2002 | Wireline Crossing | Jamestown, CA | 03/08/2003 | $1,000.00 | $0.00 | Annually | N/A |
| SERA-031802 | 03/08/2002 | Wireline Crossing | Jamestown, CA | 03/08/2003 | $1,000.00 | $0.00 | Annually | N/A |
| SERA-031902 | 03/08/2002 | Wireline Crossing | Jamestown, CA | 03/08/2003 | $1,000.00 | $0.00 | Annually | N/A |
| SERA-032002 | 03/08/2002 | Wireline Crossing | Jamestown, CA | 03/08/2003 | $1,000.00 | $0.00 | Annually | N/A |

**EXHIBIT B**

SERA Form 5337-B
Revised January 2002
Agreement No. SERA-031502

## WIRELINE CROSSING AGREEMENT

THIS AGREEMENT, Made as of **March 8, 2002**, the "**Effective Date**", by and between **Sierra Railroad Company**, a California corporation, whose mailing address is **220 S. Sierra Avenue, Oakdale, CA 95361**, hereinafter called "**Licensor**", and **AT&T Broadband**, its licensees, agent, successors, assigns and allied and associated companies, whose mailing address is **2646 N. West Lane, Stockton, CA 95205**, hereinafter called "**Licensee**". WITNESSETH:

WHEREAS, Licensee desires to construct, use and maintain a **cable television** wire or cable solely for cable television transmission, hereinafter called "**Wireline**", across the tracks and property owned or controlled by Licensor at or near **Jamestown, Tuolumne County, CA**, crossing Railroad's trackage at **Milepost 46/47 Sanguinetti Road** including necessary aerial or subterranean crossings, hereinafter called the "**Crossing**", as shown on Exhibit A, attached hereto and made a part hereof.

NOW, THEREFORE, in consideration of the mutual covenants, terms and agreements herein contained, the parties hereto agree and covenant as follows:

1. **LICENSE:**

    1.1     Licensor, insofar as it has the legal right, power and authority to do so, and its present title permits, and subject to:

    (A)     Licensor's present and future right to occupy, possess and use its property within the area of the Crossing for any and all purposes;

    (B)     all encumbrances, conditions, covenants and easements applicable to Licensor's title to or rights in the subject property; and

    (C)     compliance by Licensee with the terms and conditions herein contained;

    does hereby grant to Licensee the nonexclusive License to construct, maintain, repair, renew, operate, use, alter or change said Wireline in the Crossing above for the term herein stated, and to remove same upon termination.

    1.2     The term **Wireline**, as used herein, shall include only the wires and/or cables, poles, guys, anchors, fixtures, appliances and ancillary facilities devoted exclusively to the transmission usage above within the Crossing, and as shown on attached Application Form.

    1.3     No additional Wireline or facilities shall be placed, allowed or maintained by Licensee in, upon or along the Crossing except upon separate prior written consent of Licensor.

2. **LICENSE FEE, TERM:**

    2.1     Licensee shall pay Licensor an Annual License Fee of One Thousand U. S. Dollars **($1,000)**, payable annually on or before the anniversary of the Effective Date. Such fee shall be subject to periodic review and adjustment.

    2.2     Licensee will also pay a one-time contract preparation and administration fee of **One Thousand U. S. Dollars ($1,000)**.

    2.3     However, Licensee assumes sole responsibility for, and shall pay directly (or reimburse Licensor), any additional annual taxes and/or periodic assessments levied against Licensor or Licensor's property solely on account of said wireline.

Revised January 2002
Agreement No. SERA-031502

2.4    Effective Date of this Agreement shall be the date first written above and shall continue in effect from year to year until terminated by thirty (30) days written notice from either party to the other. License shall also be revocable in the event of Licensee's default, as herein provided, and shall also terminate upon (a) Licensee's cessation of use of the Wireline or Crossing for the purposes above, (b) removal of the Wireline, and/or (c) subsequent mutual consent.

3.    **CONSTRUCTION, MAINTENANCE AND REPAIRS:**

3.1    Licensee shall construct, maintain, relocate, repair, renew, alter, and/or remove said Wireline, in a prudent, workmanlike manner, using quality materials and complying with any applicable standards or regulations of Licensor, or Licensee's particular industry, National Electrical Safety Code or any governmental or regulatory body having jurisdiction over the Crossing.

3.2    Location and construction of Wireline shall be made strictly in accordance with designs and specifications furnished to and approved by Licensor and of materials and sizes appropriate for the purposes above recited.

3.3    All Licensee's work and exercise of rights hereunder shall be undertaken at times satisfactory to Licensor and in a manner so as to eliminate or minimize any impact on or interference with the safe use and operation of Licensor's tracks and appurtenances thereto.

3.4    In the installation and/or maintenance of said Wireline, Licensee shall not use explosives of any type or perform or cause any blasting without the separate express written consent of Licensor. As a condition to such consent, a representative will be assigned by Licensor to monitor blasting, and Licensee shall reimburse Licensor for the entire cost and/or expense of furnishing said monitor.

3.5    Any repairs or maintenance to Wireline which are necessary to protect or facilitate Licensor's use of its property shall be made by Licensee promptly, but in no event later than ten (10) days after Licensee has notice as to the need for such repair or maintenance, whether or not such repairs or maintenance result from acts of Licensee, natural or weather events or otherwise.

3.6    Licensor, in order to protect or safeguard its property, rail operations, equipment or employees from damage or injury, may request immediate repairs or renewal, and if the same is not performed, may make or contract to make such repairs or renewals, at the sole risk, cost and expense of Licensee.

3.7    Neither the failure of Licensor to object to any work done, material used, or method of construction or maintenance of said occupancy, nor any approval given or supervision excerised by Licensor, shall be construed as an admission of liability or responsibility by Licensor, or as waiver by Licensor of any of the obligations, liability and/or responsibility of Licensee under this Agreement.

3.8    Licensee hereby agrees to reimburse Licensor any loss, cost or expense (including losses resulting from train delays and inability to meet train schedules) arising from any failure of Licensee to make repairs or maintenance, or from improper or incomplete repairs or maintenance.

Revised January 2002
Agreement No. SERA-031502

4. **PERMITS, LICENSES:**

4.1    Before any work is performed, or before use of the Crossing for the contracted purpose, Licensee, at its sole cost and expense, shall obtain all necessary permits (including but not limited to zoning, building, construction, health, safety or environmental matters), letters or certificates of approval. Licensee expressly agrees and warrants that it shall conform and limit its activities to the terms of such permits, approvals and authorizations, and shall comply with all applicable ordinances, rules, regulations, requirements and laws of any governmental authority (Federal, State or Local) having jurisdiction over Licensee's activities, including the location, contact, excavation and protection regulations of the Occupational Safety and Health Act (OSHA) (29 CFR 1926.651(b), et al.), and State "One Call" – "Call Before You Dig" requirements.

4.2    Licensee assumes sole responsibility for failure to obtain such permits or approvals; for any violations thereof, or for costs or expenses of compliance or remedy.

5. **MARKING AND SUPPORT:**

5.1    With respect to any subsurface installation upon Licensor's property, Licensee, at its sole cost and expense, shall:

   (A)    support tracks and roadbed of Licensor, in a manner satisfactory to Licensor;

   (B)    backfill with satisfactory material and thoroughly tamp all trenches to prevent settling of surface of land and roadbed of Licensor; and

   (C)    either remove any surplus earth or material to be placed and distributed at locations and in such manner Licensor may approve.

5.2    After construction of Wireline, Licensee shall:

   (A)    restore said tracks, roadbed and other disturbed property of Licensor, to a condition satisfactory to Licensor; and

   (B)    erect, maintain and periodically verify the accuracy of aboveground markers, in a form approved by Licensor, indicating the location, depth and ownership of any underground Wireline or related facilities.

6. **TRACK CHANGES:**

6.1    In the event that Licensor's rail operations and/or track maintenance result in any changes in grade or alignment of or additions to Licensor's tracks or other facilities, or in the event future use by Licensor of Licensor's right-of-way and property necessitate any change of location, height or depth in Wireline or Crossing, Licensee, at its sole cost and expense and within thirty (30) days after notice in writing from Licensor, shall make changes in Wireline or Crossing to accommodate Licensor's tracks or operations.

6.2    If Licensee fails to do so, Licensor may make such changes, at Licensee's cost.

7. **WIRE CHANGES:**

7.1    Licensee shall periodically monitor and verify the depth or height of Wireline or Crossing in relation to Licensor's tracks and facilities, and shall relocate Wireline or change Crossing, at Licensee's expense, should such relocation or change be necessary to comply with the minimum clearance requirements of this Agreement.

7.2     If Licensee undertakes to revise, renew, relocate or change in any manner whatsoever all or any part of Wireline (including any change in voltage or gauge of wire), or is required by any public agency or court order to do, plans therefor shall be submitted to Licensor for approval before any such change is made. After approval, the terms and conditions of this Agreement shall apply thereto.

## 8. INTERFERENCE WITH RAIL FACILITIES:

8.1     Although the Wireline or Crossing herein permitted may not presently interfere with railroad's operations and facilities, in the event that the operation, existence or maintenance of said Wireline, in the sole judgment of Licensor, causes: (a) interference (including, but not limited to, physical interference, interference from an electromagnetic induction, or interference from stray or other currents) with Licensor's power lines; train control system, communication, signal or other wires, or electrical or electronic apparatus, or (b) interference in any manner, with the operation, maintenance or use by Licensor of its right-of-way, tracks, structures, pole lines, devices, other property, or any appurtenances thereto; then and in either event, Licensee, upon receipt of written notice from Licensor of any such interference, and at Licensee's sole risk, cost and expense, shall promptly take such remedial action or make such changes in its Wireline as may be required in the judgment of the Licensor to eliminate all such interference. Upon Licensee's failure to remedy or change, Licensor may do so or contract for same, at Licensee's sole cost.

8.2     Without assuming any duty hereunder to inspect Wireline, Licensor hereby reserves the right to inspect same and to require Licensee to undertake repairs, maintenance or adjustments to Wireline, which Licensee hereby agrees to make promptly, at Licensee's sole cost and expense.

## 9. RISK, LIABILITY, INDEMNITY:

With respect to the liabilities of the parties, it is hereby agreed that:

9.1     Licensee hereby assumes, and shall at all times hereafter release, indemnify, defend and save Licensor harmless from and against any and all liability, loss, claim, suit, damage, charge or expense which Licensor may suffer, sustain, incur or in any way be subjected to, on account of death of or injury to any person whomsoever (including officers, agents, employees or invitees of Licensor), and for damage to or loss of or destruction of any property whatsoever, arising out of, resulting from, or in any way connected with the presence, existence, operations, or use, of Wireline or any structure in connection therewith, or the restoration of premises of Licensor to good order or condition after removal; EXCEPT when proven to have been caused solely by the fault, or negligence of Licensor. HOWEVER, during any period of actual construction, repair, maintenance, replacement or removal of Wireline, wherein agents or personnel of Licensee are on the railroad right-of-way, Licensee's liability hereunder shall be absolute, irrespective of any fault or negligence of Licensor.

9.2     Use of Licensor's right-of-way involves certain risks of loss or damage as a result of Licensor's rail operations. Notwithstanding Section 9.1, Licensee expressly assumes all risk of loss and damage to Licensee's Property or Wireline in, on, over and under the Crossing, including loss of or any interference with use or service thereof, regardless of cause, including electrical field creation, fire or derailment resulting from Licensor's rail operations. For this Section, the term "**Licensee's Property**" shall include property of third parties situated or placed upon Licensor's right-of-way by Licensee or by such third parties at request of or for benefit of Licensee.

SERA Form 3537-B
Revised January 2002
Agreement No. SERA-031502

9.3    Notwithstanding Section 9.1, Licensee also expressly assumes all risk of loss which in any way may result from Licensee's failure to maintain either required clearances for any overhead Wireline or the required depth and encasement for any underground Wireline, whether or not such losses results in whole or part from Licensor's contributory negligence or joint fault.

9.4    Obligations of Licensee hereunder to defend, release, indemnify and hold Licensor harmless shall also extend to companies and other legal entities that control or are controlled by or subsidiaries of or are affiliated with Licensor, and the officers, employees and agents of each.

9.5    If a claim or action is made or brought against either party, for which the other party may be responsible hereunder in whole or in part, such other party shall be notified and permitted to participate in the handling or defense of such claim or action.

## 10. INSURANCE:

10.1    Licensee will add Licensor to its existing General Liability Insurance, or Licensee shall procure, and shall also maintain during continuance of this License, at its sole cost and expense, a policy of General Liability Insurance, naming Licensee as insured and Licensor as additional insured, covering liability under this License. Coverage of not less than One Million U.S. Dollars ($1,000,000) Combined Single Limit per occurrence for bodily injury and property damage is recommended as a prudent minimum to protect Licensee's assumed obligations hereunder. If said policy does not automatically cover Licensee's contractual liability under this License, a specific endorsement adding such coverage shall be purchased by Licensee. If said policy is written on a "claims made" basis instead of an "occurrence" basis, Licensee shall arrange for adequate time for reporting losses. Failure to do so shall be at Licensee's sole risk.

10.2    If said CGL policy is written on a "claims made" basis instead of a "per occurrence" basis, Licensee shall arrange for adequate time for reporting losses. If said CGL policy does not automatically cover Licensee's contractual liability during periods of survey, installation, maintenance and continued occupation, a specific endorsement adding such coverage shall be purchased by Licensee. Failure to do so shall be at Licensee's sole risk.

10.3    Securing such insurance shall not limit Licensee's liability hereunder, but shall be additional security therefor.

10.4    Licensor may at any time request evidence of insurance purchased by Licensee to comply with this Agreement. Failure of Licensee to comply with Licensor's demand shall be considered a default, subject to Article 13.

10.5    Licensee agrees that neither Licensee nor its agents or contractors shall perform construction or demolition operations within fifty feet (50') of any operated railroad tracks or affecting any railroad bridge, trestle, tunnel, tracks, roadbed, overpass or underpass. In the event Licensee finds it necessary to perform construction or demolition operations within said limits, the insurance industry dictates that Railroad Protective Insurance should be purchased to protect the railroad. This is because the insurance industry considers this to be a special risk, requiring special coverage and has placed in the contractor's and project sponsor's commercial general liability insurance policies and exclusion for disability assumed under any contract or agreement involving construction or demolition operations on railroad property.

Revised January 2002
Agreement No. SERA-031502

10.6    No work of any character shall be started on the property of Licensor without a Railroad Protective Liability Insurance Policy having been received in the name of and approved by Licensor as to the limits, form, and substance. Limits are One Million U.S. Dollars ($1,000,000) for bodily injury and property damage per occurrence, and an aggregate of Five Million U.S. Dollars ($5,000,000). The policy will remain in force during this project and must be provided prior to Licensor executing the covering agreement. If you are a member of AEGIS (Associated Electric & Gas Insurance Services Limited), this may be submitted for Licensor's review and acceptance.

## 11.    GRADE CROSSINGS, FLAGGING:

11.1    Nothing herein contained shall be construed to permit Licensee or Licensee's contractor to move any vehicles or equipment over tracks of Licensor, except at public road crossings, without separate prior written approval of Licensor.

11.2    If Licensor deems it advisable, during the progress of any construction, maintenance, repair, renewal, alteration, change or removal of said Wireline, to place watchmen, flagmen, inspectors or supervisors for protection of property or operations of Licensor or others on Licensor's property at the Crossing, and to keep persons, equipment and materials away from Licensor's tracks, Licensor shall have the right to do so at the sole risk, cost and expense of Licensee, but Licensor shall not be liable for failure to do so.

11.3    Subject to Licensor's consent and to Licensor's Railroad Operating Rules and existing labor agreements, Licensee may provide such flagmen, watchmen, inspectors or supervisors during all times of construction, at Licensee's sole risk, cost and expense, and in such event, Licensor shall not be liable for the failure or neglect of such watchmen, flagmen, inspectors or supervisors.

## 12.    LICENSOR'S COSTS:

12.1    Any additional or alternative costs or expenses incurred by Licensor to accommodate Licensee's continued use of Licensor's property as a result of track changes or wire changes shall also be paid by Licensee.

12.2    Licensor's expense for wages and materials for any work performed at expense of Licensee, pursuant to any stipulation of this Agreement, shall be paid by Licensee within thirty (30) days after receipt of Licensor's bill therefor.

12.3    Such expense shall include, but not be limited to, cost of railroad labor and supervision under "force account" rules, plus current applicable overhead percentages, the actual cost of materials, plus insurance, freight and handling charges on all materials used. Equipment rentals shall be in accordance with Licensor's applicable fixed rates.

12.4    All undisputed bills or portions of bills not paid within said thirty (30) days shall thereafter accrue interest at twelve percent (12%) per annum, unless limited by local law, and then at the highest rate so permitted. Unless Licensee shall have furnished detailed objections to such bills within thirty (30) days, bills shall be presumed undisputed.

Revised January 2002
Agreement No: SERA-031502

**13.   DEFAULT, BREACH, WAIVER:**

13.1   The proper and complete performance of each covenant of this Agreement shall be deemed of the essence thereof, and in the event Licensee fails or refuses to fully and completely perform any of said covenants or to remedy any breach within thirty (30) days after receiving a written notice from Licensor to do so (or within forty-eight (48) hours in the event of notice of a railroad emergency), Licensor shall have the option of immediately terminating this Agreement, and revoking the privileges and powers hereby conferred upon Licensee, regardless of License Fees having been paid in advance for any annual or other period. Upon such termination, Licensee shall make removal in accordance with Article 14.

13.2   Any waiver by either party at any time of its rights as to any covenants or condition, or any subsequent breach thereof, unless such covenant or breach is permanently waived in writing by said party.

**14.   TERMINATION, REMOVAL:**

14.1   All rights which Licensee may have hereunder shall cease and end upon the date of (a) termination, (b) revocation, and/or (c) upon Licensee's removal of Wireline from the occupancy. However, termination or revocation of this Agreement shall not affect any claims and liabilities which may have arisen or accrued hereunder, and which at the time of termination or revocation have not been satisfied, neither party, however, waiving any third party defenses or actions.

14.2   Within thirty (30) days after termination or revocation, Licensee, at its sole risk and expense, shall (a) remove Wireline from the property of Licensor, unless the parties hereto agree otherwise, (b) restore property of Licensor in a manner satisfactory to Licensor, and (c) reimburse Licensor all loss, cost or expense of Licensor resulting from such removal.

**15.   NOTICE:**

15.1   Licensee shall give Licensor at least five (5) days written notice before doing any work of any character hereunder on Licensor's property, except that in cases of emergency shorter notice may be given to said Licensor.

15.2   All other notices and communications concerning this Agreement shall be addressed to Licensee at the address above and to Licensor at the address and telephone number as follows:

> Sierra Railroad Company         Tel:   209-848-2100
> 220 S. Sierra Avenue            Fax:   209-848-8595
> Oakdale, CA 95361

15.3   Unless otherwise expressly stated herein, all such notices shall be in writing and sent via Certified or Registered Mail, Return Receipt Requested, or by courier, and shall be effective upon actual receipt, or date of refusal of such delivery.

**16.   ASSIGNMENT:**

16.1   The rights herein conferred are the privilege of Licensee only, and Licensee shall obtain Licensor's prior written consent to any assignment of Licensee's interest herein.

16.2   Subject to Section 16.1 and 16.3, this Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors or assigns, or heirs, legal representatives and assigns, as the case may be

SERA Form 39870
Revised January 2002
Agreement No. SERA-031502

16.3   Licensee shall give Licensor written notice of any legal succession (by merger, amalgamation, consolidation, reorganization, etc.) or other change of legal existence or status of Licensee, with a copy of all documents attesting to such change or legal succession, within thirty (30) days thereof. Any change of legal existence, including a name change of Licensee, will be acknowledged and an assignment required of this Agreement or a new Agreement prepared to provide for the continuation of this License and permit.

16.4   Licensor expressly reserves the right to assign this Agreement, in whole or in part, to any grantee or vendee of Licensor's underlying property interests in the Crossing, upon notice thereof to Licensee.

16.5   In the event of any unauthorized sale, transfer, assignment, sublease or encumbrance of this Agreement, or any of the rights and privileges hereunder, Licensor, at its option, may revoke this Agreement at any time after such sale, transfer, etc., by giving Licensee or any such assignee written notice of such revocation; and Licensee shall reimburse Licensor for any loss, cost or expense Licensor may incur as a result of Licensee's failure to obtain said written consent.

16.6   In the event of sale or other conveyance by Licensor of its right-of-way, across, under or over, which the Crossings is constructed, Licensor's conveyance shall be made subject to the right of Licensee to continue to occupy the Crossing on the specific right-of-way, and to operate, maintain, repair, renew thereon and to remove there from the facilities of Licensee, subject to all other terms of this Agreement.

## 17.   TITLE, LIENS, ENCUMBRANCES:

17.1   Licensee shall not at any time own or claim any right, title or interest in or to Licensor's property occupied by Licensee's Wireline, nor shall the exercise of this Agreement for any length of time give rise to any right, title or interest in Licensee to said property other than the License herein created.

17.2   Nothing herein shall be deemed to act as any warranty, guarantee, or representation of the quality of title of the right-of-way of corridor occupied or used under this Agreement.

17.3   Upon receipt of any third party claims against Licensor's title, or against Licensee's right to use, occupy or possess the Rail right-of-way or corridor or to enjoy any rights hereunder, solely on the grounds that Licensor did not have sufficient rights, title or interest in such Rail right-of-way or corridor to grant said license or the occupation or use thereof by Licensee for its facilities, Licensee at Licensee's option shall either: (1) defend such claims, with the cooperation of Licensor; or (2) vacate the Crossing and remove Licensee's Facilities therefrom. However, Licensee may also file its own condemnation action to secure continued occupation, and the terms hereof shall be incorporated in such filing, but only as to rights, if any, between Licensor and Licensee herein.

17.4   Nothing in this Agreement shall be deemed to give, and Licensor hereby expressly waives, any claim of ownership in and to any part of Licensee's Wireline.

17.5   Licensee shall not create or permit any mortgage, pledge, security, interest, lien or encumbrances, including without limitation, tax liens and liens or encumbrances with respect to work performed or equipment furnished in connection with the construction, installation, repair, maintenance or operation of Licensee's Wireline in or on any portion of the Crossing (collectively, **"Liens or Encumbrances"**), to be established or remain against the Crossing or any portion thereof or any other Licensor property.

Revised January 2002.
Agreement No. SERA-031502

17.6    In the event that any property of Licensor becomes subject to such Liens or Encumbrances, Licensee agrees to pay, discharge or remove the same promptly upon Licensee's receipt of notice that such Liens or Encumbrances has been filed or docketed against the Crossing or any other property of Licensor; however, Licensee reserves the right to challenge, at its sole expense, the validity and/or enforceability of any such Liens or Encumbrances.

18.     **GENERAL PROVISIONS:**

18.1    This Agreement, and the attached specification, contains the entire understanding between the parties hereto.

18.2    Neither this Agreement, any provision hereof, nor any agreement or provision included herein by reference, shall operate or be construed as being for the benefit of any third person.

18.3    The form or any language of this Agreement shall not be interpreted or construed in favor of or against either party hereto as the drafter thereof.

18.4    This Agreement is executed under current interpretation of any and all applicable Federal, State, County, Municipal or other local statute, ordinance or law. Each and every separate division (paragraph, clause, item, term, condition, covenant or agreement) hereof shall have independent and severable status from each other, separate division for the determination of legality, so that if any separate division is determined to be void or, such determination shall have no effect upon the validity of enforceability of each other separate division, or any other combination thereof.

18.5    This Agreement shall be construed and governed by the laws of the state in which the Wireline and Crossing is located .

IN WITNESS WHEREOF, the parties hereto have executed this Agreement in duplicate (each of which shall constitute an original) as of the date and year first above written.

Witness for Licensor:                           Sierra Railroad Company.

_(signature)_                                    By _(signature)_

                                                 Name:   John A. Pustinger
                                                 Title:    Director-Real Estate

Witness for Licensee:                            AT&T Broadband

_(signature)_                                    By

                                                 Name: _(signature)_

                                                 Title: _Permit Sup_

                                                 Who, by the execution hereof, affirms that he/she has the authority to do so and to bind the Licensee to the terms and conditions of this Agreement.

                                                 Tax Identification Number: _____

9

SERA 7454-C Rev 12/1/01

## APPLICATION FOR ALL WIRE OR CABLE LINE **CROSSING** OF PROPERTIES AND TRACK

Application and plans must be approved and written authority received from the Railroad Company before construction is begun. Original and one copy of both application and drawing, along with a **nonrefundable** Application Fee in the amount of $1,500.00 is to be submitted to: Sierra Railroad Company, PMB 161, 11250-15 St. Augustine Road, Jacksonville, FL 32257-1147

1. Reference/File Number ( _18_ )
2. Complete **Legal** Name of applicant _AT-T Broadband_
   Company Contact Name: _Hector Escalante_ Title _Permits Supervisor_
   Telephone ( _209_ ) _463-6081_ Fax ( )
3. Address _7646 N West Ln_ City _Stockton_ State _CA_ Zip _95205_
4. Type of Business _____ Individual, _____ Developer, _____ Municipality, _____ Corporation, (state in which incorporated _____ Partnership; (type and state of Partnership _____
5. Location _Singinetti & Jo Main_ feet, _____ (direction) from Railroad Milepost _46/47_
   _Sur map_
   Valuation Station of Crossing if Known: _____ Val. Map No. _____
6. Town _____ County _Tuolumne_ State _CA_
7. Total length within Railroad Right-of-Way _243_ 8. Angle of crossing _90_
9. Number of Railroad Company's tracks to be crossed _1_ Number of pole lines crossed _1_
10. Type of Crossing: _____ Electric, _✓_ CATV, _____ Telephone, _____ Communications, _____ Other: (Explain)
11. Alternating Current; Voltage _60_ No. of Phases _____
12. Direct Current; Voltage _____ Amperes _____
13. Conductors: (a) Number _1_ , (b) Conductor Material _✓_ copper, _____ aluminum, _____ fiber optic
14. Maximum voltage _____ Maximum current _____
15. Maximum fault to ground current _____ Height of wire supports above ground level _____
16. Encasement Material, if applicable _____ Outside diameter _____ Wall thickness: _____
17. Height of wires above top of rail at 60°F _24_ Feet _6_ Sag in Spans at 60°F _____
18. Height of wires above Railroad communication and signal wires at 60°F _____ Feet _____
19. Bury: Base of rail to top of casing _____
20. Bury: On R/W but not beneath tracks _____
21. Bury: Below ditches _____
22. Type of wire supports _Strand_ Size _6 m m_ False dead ends _____
23. Number of poles to be located on Railroad Company's right-of-way _2_
24. Distance from butt of pole to nearest rail of track _121.5_ feet
25. Give approximate horizontal distance from Railroad communication and signal wires _____
26. If revision/attachments to an existing agreement, give agreement number and date _____
27. If this is a supplement to a master (general) agreement, give agreement number and date _____
28. If AEGIS member, work to be performed by _____ Contractor _____ Company employees
29. Will line run parallel or approximately parallel to Railroad Company's tracks anywhere? _no_
30. Will line be located in public road Right-of-Way? _____ (If "yes", show name, road number and width of Right-of-Way on print) DOT/AAR Crossing No. _____

Proposal and construction must be in accordance with SERA's Specifications, The National Electrical Safety Code, and any governing laws or regulations. **Please note that although the specifications furnished in the Wireline Application Package are to be used as a guideline only, SERA reserves the right to approve or decline an application.**

_2/5/02_ _____ _Permits Sup_
Date _____ Signature & Title of Officer Making Application

Please Type or Print _Hector Escalante Permits Sup 209-463-6081_
_____ Name, _____ Title, _____ Telephone Number

EXHIBIT A



**EXHIBIT C**

 **SIERRA RAILROAD COMPANY**

221 1ˢᵗ Street
Davis, CA 95616
Tel:  530-759-9827 x 501
Fax:  530-759-9872
tnilsson@sierraenergycorp.com

**VIA REGISTERED MAIL, WITH RETURN RECEIPT**

March 31, 2016

Jennifer Klepperich
Comcast Real Estate - California Region
3055 Comcast Place
Livermore, CA 94551-9559

Re:    Comcast Contracts

Dear Ms. Klepperich:

I am in receipt of your March 24, 2016 letter concerning the above-referenced contracts, as well as prior correspondence from Comcast concerning these contracts. I do not, however, understand Comcast's current position as to these contracts or the amounts past-due pursuant to the terms of these contracts.

While you assert in your letter that Comcast terminated the contracts in March 2015, that purported termination itself constitutes an admission by Comcast that it was, prior to that purported termination, subject to these contracts and required to fulfill all of the terms and conditions of these contracts. If that was not the case, it would not have been necessary for Comcast to attempt to terminate them.

Comcast's long-standing obligation under these contracts is, of course, indisputable as Comcast in or about early 2003 assumed these contracts, in writing, and for some time abided by, and made payments under, the contracts. Comcast's actions during that time also constitute an admission that these contracts were, at least prior to their purported termination, binding on Comcast.

Given the above, you will, I assume, agree that Comcast is obligated to pay us for its use of our crossings prior to its purported termination, as is required under the terms and conditions of the contracts assumed by, and used by, Comcast.

There is, however, also an issue concerning Comcast's purported termination of these contracts, namely that at the same time that Comcast purported to terminate its right to use these crossings, it announced that it intended to continue using them. In other words, Comcast essentially decided, on its own, that it wanted to retain the benefits of its assumed contracts while no longer paying anything, much less price Comcast had agreed to pay, for the use of those rights. This, I assume you will agree, is not how things are generally done.

Jennifer Klepperich
Comcast Real Estate - California Region
March 31, 2016
Page 2

However, given Comcast's repeated statements that it wishes to terminate these contracts, we will take Comcast at its word. This letter thus provides notice that Comcast has until the end of the day on April 24, 2016 (30 days from the date of Comcast's most recent termination letter) to remove its wirelines and equipment from our property and to restore our property to its pre-contract condition (both of which are required under the contracts at issue). Comcast also by April 24, 2016 needs to pay us all past-due amounts for its use of these crossings.

Should Comcast fail to remove its wirelines and other equipment, to restore our property, and to pay us all amounts past due by the end of the day on April 24, 2016, we will on April 25 have our section crews remove the relevant wirelines and property, restore our property, and bill Comcast therefor (as Comcast agreed is our right under the contracts at issue). We will subsequently have no alternative but to file suit against Comcast for such costs and for all past-due amounts.

If you have any questions regarding this matter, or wish to discuss this further, please contact me at the above address or telephone number.

Sincerely,

Torgny Nilsson
General Counsel
Sierra Railroad Company

**EXHIBIT D**

## Comcast Crossings - Sonora and Jamestown

| Crossing Number | Vicinity (mileposts) | Nearest Road | Height Above Track | Poles in ROW | Approximate Milepost | Latitude | Longitude |
|---|---|---|---|---|---|---|---|
| **Crossings known to Comcast** | | | | | | | |
| SERA 030102 | 40/41 | Seco Road | | | 40.8 | N 37° 56.737 | W120° 25.066 |
| SERA 030402 | 41/42 | Rosevoir Road | | | 41.5 | N 37° 57.089 | W120° 24.888 |
| SERA 030502 | 41/42 | | 20'-11" | 2 | 41.55 | N 37° 57.126 | W120° 24.853 |
| SERA 030602 | 42/43 | | 40' | 2 | 42.3 | N 37° 57.589 | W120° 24.698 |
| SERA 030702 | 42/43 | | 31'-2" | 2 | 42.8 | N 37° 57.577 | W120° 24.349 |
| SERA 030802 | 44/45 | Railway Lane | 26'-3" | 2 | 44.1 | N 37° 57.773 | W120° 23.059 |
| SERA 030902 | 44/45 | Lime Kiln Road | 25' | 2 | 44.45 | N 37° 57.952 | W120° 22.757 |
| SERA 031002 | 45/46 | Hospital and S. Washington | 30'-6" | 2 | 45.1 | N 37° 58.411 | W120° 22.788 |
| SERA 031102 | 45/46 | Hospital Road | 26'-6" | 2 | 45.5 | N 37° 58.468 | W120° 22.592 |
| SERA 031202 | 45/46 | Hospital Road | 28'-10" | 2 | 45.55 | N 37° 58.447 | W120° 22.544 |
| SERA 031302 | 46/47 | Sanguinetti Road | 24'-3" | 2 | 46.1 | N 37° 58.436 | W120° 22.054 |
| SERA 031402 | 46/47 | Sanguinetti Road | 27'-3" | 2 | 46.2 | N 37° 58.444 | W120° 22.039 |
| SERA 031602 | 47/48 | Tuolumne Road | 27'-3" | 2 | 47.3 | N 37° 58.442 | W120° 20.724 |
| | | | | | | | |
| **Crossings not found by Comcast** | | | | | | | |
| | | Rock Siding | | | 38.7 | N 37° 55.687 | W120° 26.506 |
| SERA 030202 | 41/42 | Rail Town | | 2 | 41 | N 37° 56.887 | W120° 25.073 |
| SERA 030302 | 41/42 | | 27'-9" | 2 | 41.2 | | |
| SERA 032002 | 41/42 | 8th Street | 26'-3" | 2 | 41.6 | N 37° 57.134 | W120° 24.849 |
| | | Campo Seco West | | | 44 | N 37° 57.742 | W120° 23.192 |
| | | Campo Seco East | | | 44.5 | N 37° 57.973 | W120° 22.738 |
| | | Washington | | | 45.2 | N 37° 58.470 | W120° 22.754 |
| | | Hospital Road | | | 45.8 | N 37° 58.292 | W120° 22.335 |
| | | Old Wards Ferry | | | 46.05 | N 37° 58.416 | W120° 22.075 |
| SERA 031502 | 46/47 | Sanguinetti Road | 24'-6" | 2 | 46.3 | N 37° 58.502 | W120° 21.740 |
| | | Joe Martin Road | | | 46.6 | N 37° 58.419 | W120° 21.524 |
| | | Sullivan Creek | | | 47.2 | N 37° 58.506 | W120° 20.913 |
| | | Tuolumne Road | | | 47.4 | N 37° 58.448 | W120° 20.712 |
| | | Hess Road | | | 48.5 | N 37° 58.043 | W120° 19.788 |

**EXHIBIT E**

**Torgny Nilsson**

| | |
|---|---|
| **From:** | Walter Hansell <WHansell@cwclaw.com> |
| **Sent:** | Friday, May 17, 2019 4:47 PM |
| **To:** | Torgny Nilsson |
| **Cc:** | Haslett, Tracy |
| **Subject:** | RE: Sierra Railroad/Comcast crossings |

Dear Torgny,

We seem to be in the same place we have been already: Comcast is unable to identify any existing rail crossing locations, from the information Sierra Railway provided, where it requires a grant of rights from, or owes compensation to, Sierra Railway. So in that sense we are fine as-is.

Separately, Comcast still requests to be provided a public safety-based temporary construction crossing coordination from Sierra Railway, for the project location known as 850 Sanguinetti Rd in Sonora, CA, involving service to a public-safety nonprofit organization. If that project would additionally involve new crossing rights/placement in Sierra Railway property and not supported by existing Comcast rights, we are certainly willing to discuss that and become informed of the basis for that. Comcast field crews are told by Sierra railway that the temporary-work safety cooperation is on legal hold by Sierra.

Let me know if we should provide you the project design map for this purpose. Please advise how the service connection and safety coordination can move forward. Thank you, Walter

Walter W. Hansell
Cooper, White & Cooper LLP
201 California Street, 17th Floor
San Francisco, CA 94111
Telephone: 415-433-1900
Direct Line: 415-765-6287
Fax: 415-433-5530
email: whansell@cwclaw.com

---

**From:** Torgny Nilsson [mailto:tnilsson@sierraenergy.com]
**Sent:** Thursday, May 16, 2019 3:22 PM
**To:** Walter Hansell
**Cc:** Haslett, Tracy
**Subject:** RE: Sierra Railroad/Comcast crossings

Walter and Tracy,

It's been a little over a month since you accessed the relevant documents. When can I expect to hear from you concerning this matter?

Torgny



**Torgny Nilsson**
General Counsel
(530) 759-9827 x501 | cell (530) 304-0144
1222 Research Park Drive, Davis, CA 95618

**From:** Walter Hansell <WHansell@cwclaw.com>
**Sent:** Monday, April 8, 2019 4:36 PM
**To:** Torgny Nilsson <tnilsson@sierraenergy.com>
**Cc:** Haslett, Tracy <Tracy_Haslett@Comcast.com>
**Subject:** RE: Sierra Railroad/Comcast crossings

Torgny,

Yes thank you for sending, and we were able to access the file contents, which reflected Sharefile upload dates of October 2018. There is a lot of material so it will take some time to review and digest, after which we expect to be back to you further. Meanwhile please feel free to contact me or Tracy if you need something.

Walter

Walter W. Hansell
Cooper, White & Cooper LLP
201 California Street, 17th Floor
San Francisco, CA  94111
Telephone:  415-433-1900
Direct Line:  415-765-6287
Fax:  415-433-5530
email:  whansell@cwclaw.com

**From:** Torgny Nilsson [mailto:tnilsson@sierraenergy.com]
**Sent:** Monday, April 08, 2019 4:29 PM
**To:** Walter Hansell
**Cc:** Haslett, Tracy
**Subject:** RE: Sierra Railroad/Comcast crossings

Walter and Tracy,

I have asked ShareFile to resend access emails to both of you. Can you confirm that you have each received the email from ShareFile and now have access to the relevant documents?

Thank you,

Torgny



**Torgny Nilsson**
General Counsel
(530) 759-9827 x501 | cell (530) 304-0144
1222 Research Park Drive, Davis, CA 95618

**From:** Walter Hansell <WHansell@cwclaw.com>
**Sent:** Wednesday, April 3, 2019 6:11 PM
**To:** Torgny Nilsson <tnilsson@sierraenergy.com>
**Cc:** Haslett, Tracy <Tracy_Haslett@Comcast.com>
**Subject:** RE: Sierra Railroad/Comcast crossings

2

Torgny, yes we remain interested in a call. We all 3 seem to have complicated schedules. Do you have availability tomorrow or Friday this week in the afternoon, for example?

Walter

Walter W. Hansell
Cooper, White & Cooper LLP
201 California Street, 17th Floor
San Francisco, CA 94111
Telephone: 415-433-1900
Direct Line: 415-765-6287
Fax: 415-433-5530
email: whansell@cwclaw.com

---

**From:** Torgny Nilsson [mailto:tnilsson@sierraenergy.com]
**Sent:** Tuesday, April 02, 2019 8:45 AM
**To:** Walter Hansell
**Cc:** Haslett, Tracy
**Subject:** RE: Sierra Railroad/Comcast crossings

Walter,

Were you still interested in a call? I sought to schedule a date with you and Tracy but never heard back. We have been repeatedly contacted by Comcast concerning its desire for new crossings of our line which we, presumably understandably, cannot agree to until this matter is behind us.

Torgny



**Torgny Nilsson**
General Counsel
(530) 759-9827 x501 | cell (530) 304-0144
1222 Research Park Drive, Davis, CA 95618

---

**From:** Walter Hansell <WHansell@cwclaw.com>
**Sent:** Thursday, January 31, 2019 6:22 PM
**To:** Torgny Nilsson <tnilsson@sierraenergy.com>
**Cc:** Haslett, Tracy <Tracy_Haslett@Comcast.com>
**Subject:** RE: Sierra Railroad/Comcast crossings

Dear Torgny,

I understand that Comcast in-house counsel Tracy Haslett received a phone call from you earlier this month, but you have not connected yet in real time. Meanwhile I had not heard back from you directly on the note below from around that time.

Tracy suggests we all have a call together. Might you have a ny times to suggest next week? I look forward to talking. Walter

Walter W. Hansell
Cooper, White & Cooper LLP

201 California Street, 17th Floor
San Francisco, CA 94111
Telephone: 415-433-1900
Direct Line: 415-765-6287
Fax: 415-433-5530
email: whansell@cwclaw.com

---

**From:** Walter Hansell
**Sent:** Tuesday, January 08, 2019 4:12 PM
**To:** 'tnilsson@sierraenergy.com'
**Subject:** Sierra Railroad/Comcast crossings

Dear Torgny,

You may recall we had some inconclusive dealings awhile back about certain Comcast cable crossings over Sierra Railway locations. The difficulty has been in part, distinguishing locations where Comcast has an independent right of crossing, from locations if any, where Sierra Railway consent for a crossing must be obtained or maintained directly from Sierra Railway on a current basis.

Tracy Haslett, in-house counsel at Comcast, has asked me to assist her in trying to figure this out again, following up from the email communication below which you had with her in recent months. May I ask you to send me the referenced ShareFile link, to the information or documents you suggest we review for this purpose. Starting from there we may be able to have a productive conversation.

Please let me know, and feel free to call me as well at my direct number here, (415) 765-6287. Thank you

Walter

Walter W. Hansell
Cooper, White & Cooper LLP
201 California Street, 17th Floor
San Francisco, CA 94111
Telephone: 415-433-1900
Direct Line: 415-765-6287
Fax: 415-433-5530
email: whansell@cwclaw.com

---

**From:** Torgny Nilsson <tnilsson@sierraenergy.com>
**Sent:** Friday, November 16, 2018 10:06 AM
**To:** Haslett, Tracy <Tracy_Haslett@Comcast.com>
**Subject:** RE: [EXTERNAL] Re: Sierra Railroad

Tracy,

Am I to understand that Comcast purchased the equipment crossing our property from AT&T Broadband, assumed all the AT&T's crossing agreements with us, and for many years made payments to us as the owner of the properties at issue, all without ever bothering to determine who owns the property that contains crossings that are absolutely necessary to Comcast's business?

Comcast is a sophisticated company with great resources at its disposal. I suspect Comcast already knows that we have owned the property at issue since 1897, that the license agreements with AT&T (which Comcast adopted) identify us as the owner of the property, that the California BOE identifies us as the owner of the property (as we pay the property taxes on it), and that the U.S. Surface Transportation Board identifies us as the owner of the railroad tracks that Comcast's equipment physically crosses at each of the locations at issue.

4

Comcast presumably also knows that no other person or entity has ever claimed any interest in the property at issue or any right to payments from Comcast as to Comcast's crossings of that property, even though Comcast's crossings are obvious to anyone who looks. It is presumably for all these reasons that Comcast for many years paid us (as the owner of the properties at issue) for Comcast's crossings of those properties.

Comcast's claim to need proof of our ownership of the property at issue seems disingenuous and merely intended to delay Comcast's fulfillment of its obligations. But, giving Comcast the benefit of the doubt, if Comcast has any documentary evidence to support its seemingly baseless questioning of our ownership of any of the specific properties at issue, please provide it. But please then also explain what has prevented Comcast from paying us for its use of our remaining properties as to which Comcast has no such documentary evidence. If Comcast lacks any such documentary evidence at all, it's time for Comcast to cease its transparent game-playing and to simply pay what it contractually agreed to pay us for its use of our property.

A call after Thanksgiving would be fine. I am currently available before 9 a.m, or after noon, on both November 26 and 27. Please let me know if either of those days works for you.

Sincerely,

Torgny

**Torgny Nilsson,** *General Counsel*
**Sierra Railroad Company**
530.759.9827 x501 | 530.759.9872 fax
1222 Research Park Drive, Davis, CA 95618

---

**From:** Haslett, Tracy <Tracy_Haslett@Comcast.com>
**Sent:** Thursday, November 15, 2018 11:17 AM
**To:** Torgny Nilsson <tnilsson@sierraenergy.com>
**Subject:** RE: [EXTERNAL] Re: Sierra Railroad

I got the link and was able to access the documents. I do not see any proof of ownership of the areas that we cross. Can you please send that to me? I will take a look at the invoices against the agreements they reference.

Let's have a call the week following Thanksgiving if you are available.

---

**From:** Torgny Nilsson <tnilsson@sierraenergy.com>
**Sent:** Thursday, November 15, 2018 1:55 PM
**To:** Haslett, Tracy <Tracy_Haslett@Comcast.com>
**Subject:** RE: [EXTERNAL] Re: Sierra Railroad

As I noted in my prior email, I added you on October 11. I do not understand why you have waited over a month to let me know that you did not receive the link.

I will add you again now. Please let me know today whether (or not) you receive the link.

Torgny

---

**From:** Haslett, Tracy <Tracy_Haslett@Comcast.com>
**Sent:** Thursday, November 15, 2018 9:33 AM

**To:** Torgny Nilsson <tnilsson@sierraenergy.com>
**Subject:** RE: [EXTERNAL] Re: Sierra Railroad

I still have not received the Sharefile Folder.

---

**From:** tnilsson@sierraenergy.com <tnilsson@sierraenergy.com>
**Sent:** Thursday, October 11, 2018 12:10 PM
**To:** Haslett, Tracy <Tracy_Haslett@Comcast.com>
**Subject:** RE: [EXTERNAL] Re: Sierra Railroad

Tracy,

I have added you (I think) to a ShareFile folder containing the documents you requested. We just started using this service, so if you haven't received an email with the link, please let me know.

And yes, while obviously not your fault, this is incredibly duplicative. We've had numerous back-and-forths with Comcast about this matter, with Comcast generally taking the position that it would be happy to pay for their crossings of our property if we could simply provide information to support our payment demands. First Comcast claimed not to have copies of the relevant contracts. So we provided them. Next, Comcast claimed it needed to locate each of the crossings, to confirm it has equipment there. So we provided railroad milepost and road references for the crossings. Next, Comcast claimed that wasn't enough information, that it also needed GPS locations and photographic evidence of the crossings. So we provided that. After we did so, Comcast went silent.

Given Comcast's silence, we have been preparing this matter for suit to recover all unpaid sums. We have also been considering cutting Comcast's lines crossing our property (our reasoning being that we would thereby only be acting the way Comcast would if any of its own customers announced that they would no longer pay for contractual services provided by Comcast unless Comcast provided them with a copy of the relevant contract, photos and GPS coordinates of any relevant cable lines, etc. and then simply continued to ignore Comcast's payment demands; I imagine Comcast would immediately terminate their services, leaving it to their customer to do the work required to re-establish service (once all past-due amounts had been paid in full)).

But we (at least prior to this dispute) had a longstanding good relationship with Comcast. We therefore hoped this dispute could be resolved amicably. And we remain willing to resolve this matter amicably, outside litigation and without cutting Comcast's lines, if Comcast also shows itself willing to do so. We would even be willing to enter into new crossing agreements with Comcast to replace the contracts Comcast claims to have terminated (while thereafter still continuing to use the crossings). And we would be willing to enter into crossings agreements to legitimize the additional crossings Comcast seems to have installed on our property without permission, via an ongoing trespass. But our patience is wearing thin. We would appreciate a prompt response as to what Comcast wishes to do as this dispute has gone on long enough.

Regards,

Torgny

**Torgny Nilsson,** *General Counsel*
**Sierra Railroad Company**
530.759.9827 x501 | 530.759.9872 fax
1222 Research Park Drive, Davis, CA 95618

---

**From:** Haslett, Tracy <Tracy_Haslett@Comcast.com>
**Sent:** Tuesday, October 9, 2018 11:18 AM

**To:** Torgny Nilsson <tnilsson@sierraenergy.com>
**Subject:** RE: [EXTERNAL] Re: Sierra Railroad

If you would mail those documents to my attention I would appreciate it.

Comcast Corporation
1701 JFK Boulevard
Philadelphia, PA 19103
Attention:  Tracy Haslett, 50th Floor

I will set up a call to see if we can get this resolved as soon as I review the documentation.  I apologize if this is a duplicative request.

Thank you,
Tracy

**From:** Torgny Nilsson <tnilsson@sierraenergy.com>
**Sent:** Monday, October 8, 2018 8:33 PM
**To:** Haslett, Tracy <Tracy_Haslett@Comcast.com>
**Subject:** [EXTERNAL] Re: Sierra Railroad

Dear Ms. Haslett:

I would be happy to provide you with backup concerning our claim for payment from Comcast for its past, and continued, use of our property. But I cannot imagine what backup Comcast might still need. From our perspective, not only should Comcast at all times have had the relevant information in its own files, but we have now several times provided Comcast with duplicates of that information, including the following:

1.  Copies of the 17 underlying contracts that Comcast assumed in early 2003 and pursuant to which Comcast made payments to us through February 2015.

2.  Invoices for all sums due for Comcast's continued use of our property after February 2015.

3.  GPS, milepost, latitude and longitude, photographs, and other information concerning the relevant crossings.

The only information Comcast may not have is an up to date invoice for all payments currently due. As of October 31, 2018, that sum is $200,988.87. I can provide you with an invoice for that if helpful.

If there is anything else you need, please let me know what it is. Though we have been preparing this matter for suit, we remain willing to resolve this matter in an amicable manner. We also remain willing, as we've previously noted, to enter into new agreements with Comcast to replace the crossing agreements Comcast unilaterally terminated.

Please let me know how you wish to proceed.

Sincerely,

Torgny Nilsson

7

**Torgny Nilsson,** *General Counsel*
**Sierra Railroad Company**
530.759.9827 x501 | 530.759.9872 fax
1222 Research Park Drive, Davis, CA 95618


On Fri, Oct 5, 2018 at 9:53 AM Haslett, Tracy <Tracy_Haslett@comcast.com> wrote:

Mr. Nilsson,


   I am counsel for Comcast and would like to schedule some time for us to discuss the above-reference matter.  If you could send me some sort of backup to the claim that Comcast owes Sierra Railroad $187K it would be most appreciated.


Thank you for your anticipated cooperation in this matter.  I look forward to hearing from you soon.


Regards,

Tracy Haslett

CM-010

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address):
Michael H. Wallenstein (SBN 243548)
WOLF WALLENSTEIN, PC
11400 West Olympic Boulevard, Suite 700, Los Angeles, California 90064

TELEPHONE NO.: (310) 622-1000   FAX NO. (Optional): (310) 457-9087
ATTORNEY FOR (Name): Plaintiff Sierra Railroad Company

SUPERIOR COURT OF CALIFORNIA, COUNTY OF TUOLUMNE
STREET ADDRESS: 41 W. Yaney Avenue, Second Floor
MAILING ADDRESS: 41 W. Yaney Avenue, Second Floor
CITY AND ZIP CODE: Sonora, California 95370
BRANCH NAME: Historic Courthouse

CASE NAME:
SIERRA RAILROAD COMPANY v. COMCAST CABLE COMMUNICATIONS, LLC, et al.

**FILED**
JUL 1 4 2021
Superior Court of California
County of Tuolumne
By: **Nancy James** _____ Clerk

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: CV 63918 |
|---|---|---|
| [X] Unlimited (Amount demanded exceeds $25,000) | [ ] Limited (Amount demanded is $25,000) | [ ] Counter  [ ] Joinder | JUDGE: |
| | | Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | DEPT.: |

BY FAX

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)
**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)
**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)
**Employment**
[ ] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[X] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)
**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)
**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)
**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)
**Enforcement of Judgment**
[ ] Enforcement of judgment (20)
**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint (not specified above) (42)
**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition (not specified above) (43)

2. This case [ ] is  [X] is not  complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [ ] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought (check all that apply): a. [X] monetary  b. [X] nonmonetary; declaratory or injunctive relief  c. [ ] punitive
4. Number of causes of action (specify): 6
5. This case [ ] is  [X] is not  a class action suit.
6. If there are any known related cases, file and serve a notice of related cases. (You may use form CM-015.)

Date: June 30, 2021
Michael H. Wallenstein
_____
(TYPE OR PRINT NAME)          (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courts.ca.gov

**TUO- CV-100**

<table>
<tr><td>

**SUPERIOR COURT OF CALIFORNIA**
**COUNTY OF TUOLUMNE**
41 W. Yaney Avenue
Sonora, CA 95370
Phone: (209) 533-5555

</td><td>

Space below for use by Court Clerk only.

**FILED**

**JUN 3 0 2021**

**Superior Court of California**
**County of Tuolumne**
By: **Nancy Jame.** _____ Clerk

</td></tr>
<tr><td>

Plaintiff(s):

Sierra Railroad Company, a California Corporation

</td><td></td></tr>
<tr><td>

Defendant(s):

Comcast Cable Communications, LLC et al

</td><td>

Case Number:
CV63918

</td></tr>
</table>

### DELAY REDUCTION PROGRAM INFORMATION AND SETTING

This case is in Tuolumne County's delay reduction program. Special rules apply to this case. It is the duty of each party to be familiar with the rules and the date, time, and place of the first case management conference.

This notice must be served with the Summons on all defendants and cross-defendants. Notice of any other pending management conference must be served on subsequently named defendants and cross-defendants.

The first case management conference hearing date is set on:

Date: 11/18/2021     Time: 2:30pm     Dept. No. 2

*(To be completed by clerk.)*

*At least fifteen (15) calendar days (CRC Rule 3.725) before the Case Management Conference, each party must file with the court and serve on all other parties a case management conference statement. The mandatory case management statement, Judicial Council form CM-110, must be used.*

**NOTICE**: The advance jury fee of $150.00 per side is *not refundable*, and must be deposited on or before the date scheduled for the initial case management conference in this action. If no case management conference is scheduled, then the jury fee must be deposited no later than 365 calendar days after the filing of the initial complaint. If the party has not appeared before the initial case management conference, or has appeared more than 365 calendar days after the filing of the initial complaint, the jury fee must be deposited at least 25 calendar days before the date initially set for trial. If the action is an unlawful detainer, the jury fee must be deposited at least five days before the date set for trial.

DELAY REDUCTION PROGRAM INFORMATION AND SETTING