UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SIERRA RAILROAD COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>COMCAST CABLE COMMUNICATIONS, LLC,<br><br>Defendant. | No. 1:21-cv-01293-KES-BAM<br><br><br>ORDER GRANTING MOTION TO DISMISS<br><br>(Doc. 7) |

This action was filed by plaintiff Sierra Railroad Company ("Sierra") against defendant Comcast Cable Communications, LLC ("Comcast") for the alleged breach of wireline crossing license agreements. Comcast moves for dismissal of four causes of action asserting that the statute of limitations bars those causes of actions and that one cause of action should be dismissed as duplicative. Doc. 7. The matter is fully briefed and suitable for resolution without oral argument. For the reasons set forth below, the motion to dismiss is granted with leave to amend.

**I.  BACKGROUND**[1]

In early 2002, Sierra licensed seventeen wireline crossings in Tuolumne County to Comcast's predecessor, AT&T Broadband. Doc. 1, Ex. A ("Compl.") ¶¶ 2–3. Comcast expressly

---

[1] The recitation of facts is based on the allegations contained in the complaint, the truth of which the Court accepts for purposes of resolving the motion to dismiss. *See Boquist v. Courtney*, 32 F.4th 764, 772 (9th Cir. 2022).

agreed to assume all the licensee's obligations on or about February 2003. *Id.* The licenses require, among other obligations, for the licensee to pay an annual license fee in exchange for the non-exclusive right to maintain cable television wirelines across Sierra's corridors. *Id.* ¶ 13. The licenses also required that, upon termination of a license, Comcast was to promptly remove its equipment and pay any license fees and late fees due at the time of termination. *Id.* ¶ 16b. The licensee was required to pay interest at the rate of 12% per annum on all unpaid annual license fees. *Id.* ¶ 16d.

In 2013, Comcast stopped paying the annual licenses for the crossings, but it continued to use the crossings and wrongly claimed it had independent right to do so. *Id.* ¶¶ 2, 17. The parties attempted to resolve the dispute over the following two years and Comcast repeatedly claimed that it needed more time to research the situation. *Id.* ¶ 17. In the interim, Comcast installed nine new wireline facilities without Sierra's permission and without obtaining new license agreements. *Id.* ¶ 18.

On March 16, 2015, Comcast purported to unilaterally terminate the licenses. *Id.* ¶ 19. At that time, Comcast owed Sierra more than $128,000, which became immediately payable under Section 14 of the licenses. *Id.* Notwithstanding Comcast's purported termination of the licenses, Comcast failed to remove its facilities from Sierra's corridors and continued to make use of and generate revenue from occupying Sierra's property. *Id.* ¶ 20. By March 2016, Comcast owed Sierra more than $204,000.

Sierra accepted Comcast's termination of the license agreements and demanded that Comcast remove its facilities and pay all past rents due. *Id.* ¶ 21. On March 31, 2016, Sierra's counsel sent a letter to Comcast's counsel stating, in part:

> This letter thus provides notice that Comcast has until the end of the day on April 24, 2016 (30 days from the date of Comcast's most recent termination letter) to remove its wirelines and equipment from our property and to restore our property to its pre-contract condition (both of which are required under the contracts at issue). Comcast also by April 24, 2016 needs to pay us all past-due amounts for its use of these crossings.

Doc. 1 at 37.

///

2

1    Over the following years, Comcast promised that it would try to reach a resolution of the
2    dispute to maintain its facilities on Sierra's property.  Compl. ¶ 22.  In July 2016, Comcast's
3    counsel assured Sierra that it was "prepared to observe and respect property rights that are
4    adequately brought to [their] attention" and requested additional information so that the parties
5    could "mutually identify any locations between them of unresolved cable crossing rights and
6    obligations, and enable [the parties] to confirm orderly and customary agreements and
7    arrangements for continued service."  *Id.*  Comcast claimed it did not know where its facilities
8    were located and requested that information, which Sierra provided.  *Id.* ¶¶ 22–23.  Sierra
9    "reasonably relied on Comcast's representations" and the fact that Comcast was a major company
10   and did not pursue a judicial remedy.  *Id.* ¶ 23.  Comcast's facilities remained in Sierra's
11   property, including at the seventeen properties that had been subject to the license agreements and
12   at nine unauthorized locations, while Comcast "continued to falsely promise Sierra that it was
13   trying to resolve the dispute."  *Id.* ¶ 24.
14   In October 2018, Comcast's in-house counsel requested additional information, and
15   Sierra, "[b]elieving that by designating a new representative to resolve this dispute Comcast
16   would more actively pursue a resolution," did not file a lawsuit.  *Id*.  Sierra promptly agreed to
17   provide the requested information and indicated that it was preparing to file a legal action.  *Id.*  In
18   response, Comcast's counsel emailed Sierra on October 9, 2018, stating: "I will set up a call to
19   see if we can get this resolved as soon as I review the documentation.  I apologize if this is a
20   duplicative request."  *Id.* ¶ 25.  The parties exchanged numerous additional emails, through
21   April 2019, in an attempt to resolve the dispute.  *Id*.  Comcast eventually stopped any effort to
22   rectify the situation.  *Id.* ¶ 26.  Due to "Comcast's false assurances that it would work in good
23   faith to resolve the disputes" and Sierra's reasonable reliance on the assurances, Sierra argues that
24   Comcast is estopped from asserting a statute of limitations defense.  *Id.* ¶ 26.
25   On June 30, 2021, Sierra filed a complaint for (1) breach of contract, (2) breach of implied
26   covenant of good faith and fair dealing, (3) continuing trespass, (4) continuing nuisance, (5) open
27   book account, and (6) declaratory relief.  *See* Compl.  On August 25, 2021, Comcast removed this
28   action to this Court.  Comcast filed a motion to dismiss this action and the matter is fully briefed.

1 | Docs. 7, 10, 11.

2 | **II.    LEGAL STANDARD**

Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). In evaluating a motion to dismiss under Rule 12(b)(6), the Court presumes the factual allegations within the complaint to be true and draws all reasonable inferences in favor of the nonmoving party. *Murguia v. Langdon*, 61 F.4th 1096, 1106 (9th Cir. 2023) (citing *Usher v. City of L.A.*, 828 F.2d 556, 561 (9th Cir. 1987)).

Rule 8(a) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009). Under federal notice pleading standards, the complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007) (internal citation and quotations omitted). "This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002). Moreover, it is inappropriate to assume that the plaintiff "can prove facts that it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

If a court dismisses a complaint for failure to state a claim, it should "freely give leave" to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2). The "underlying purpose of Rule 15 [is] to facilitate decision on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (cleaned up). However, a court has discretion to deny leave to amend due to "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of

4

amendment." *Leadsinger, Inc. v. BMG Music Pub.*, 512 F.3d 522, 532 (9th Cir. 2008).

## III. ANALYSIS

### A. Statute of Limitations

Comcast moves to dismiss the first cause of action (breach of contract), second cause of action (breach of implied covenant of good faith and fair dealing), fifth cause of action (open book account), and sixth cause of action (declaratory relief) arguing that the causes of action are barred by the statute of limitations and that its promise to "try" to resolve the dispute is insufficient to estop it from asserting a statute of limitations defense. Doc. 7. Comcast argues that Sierra's contract-related claims accrued in March 2015 or March 2016 and that the first, second, fifth, and sixth cause of action are subject to a four-year statute of limitations. Doc. 7 at 4. A claim may be dismissed under Rule 12(b)(6) on the basis that the limitations period has expired if "the running of the statute is apparent on the face of the complaint." *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010). Sierra opposes the motion to dismiss, arguing that the doctrines of equitable estoppel and continuous accrual preclude Comcast's statute of limitations defense. Doc. 10.

In its first, second, and fifth causes of action, Sierra alleges that Comcast purported to unilaterally terminate the license agreements in March 2015, that Sierra accepted the termination in March 2016, that all fees were due within 30 days of the termination of the license agreements, and that Comcast has not paid the fees owed or removed its facilities from Sierra's property. Compl. ¶¶ 19, 21, 31, 32, 58. Sierra's first, second, and fifth causes of action are subject to a four-year statute of limitations. California Code of Civil Procedure § 337 establishes a four-year statute of limitations for breach of contract and open book account claims. Cal. Code Civ. Proc. § 337(a)–(b); *Pro. Collection Consultants v. Lauron*, 8 Cal. App. 5th 958, 966 (2017). In California, a claim for breach of the implied covenant of good faith and fair dealing is subject to the same statute of limitations as a claim for breach of contract. *Ladd v. Warner Bros. Ent., Inc.*, 184 Cal. App. 4th 1298, 1309 n.7 (2010) (citing *Kriger v. Nick Alexander Imports, Inc.*, 234 Cal. App. 3d 205, 220 (1991)).

Sierra's declaratory relief cause of action seeks a judicial determination as to the amounts

1  due pursuant to the terminated license agreements and asks for Comcast to be enjoined from
2  entering or using Sierra's property without Sierra's permission. Compl. ¶¶ 59–64. The statute of
3  limitations for a declaratory relief cause of action is derivative of the underlying claim. *Snyder v.*
4  *California Ins. Guarantee Assn.*, 229 Cal. App. 4th 1196, 1208 (2014). The sixth cause of action
5  is thus also subject to a four-year statute of limitations to the extent it seeks declaratory relief
6  based on the underlying claims in the first, second, and fifth causes of action.

7  As Sierra filed its complaint on June 30, 2021, its claims would be time-barred under the
8  four-year statute of limitations whether the termination date was March 2015 or March 2016,
9  unless Sierra can sufficiently allege that equitable estoppel precludes Comcast's statute of
10 limitations defense or that Sierra's causes of action are subject to the doctrine of continuous
11 accrual.

**1. Sierra fails to sufficiently allege equitable estoppel.**

13 The doctrine of equitable estoppel bars a defendant from invoking the statute of
14 limitations defense where the defendant's conduct, relied on by the plaintiff, induced the plaintiff
15 to refrain from instituting legal proceedings. *Shaffer v. Debbas*, 17 Cal. App. 4th 33, 43 (1993).
16 Equitable estoppel requires that the "(1) the party to be estopped must be apprised of the facts;
17 (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting the
18 estoppel has a right to believe it was so intended; (3) the other party must be ignorant of the true
19 state of facts; and (4) he must rely upon the conduct to his injury." *Schafer v. City of Los*
20 *Angeles*, 237 Cal. App. 4th 1250, 1261 (2015). The reliance must have been reasonable under the
21 circumstances. *Mills v. Forestex Co.*, 108 Cal. App. 4th 625, 655 (2003). Although the
22 defendant does not need to have acted in bad faith or intended to mislead the plaintiff, *Shaffer*, 17
23 Cal. App. 4th at 43, "the plaintiff must point to some fraudulent concealment, some active
24 conduct by the defendant '*above and beyond* the wrongdoing upon which the plaintiff's claim is
25 filed, to prevent the plaintiff from suing in time,'" *Lukovsky v. City & Cnty. of San Francisco*,
26 535 F.3d 1044, 1052 (9th Cir. 2008) (quoting *Guerrero v. Gates*, 442 F.3d 697, 706 (9th Cir.
27 2006)). "The existence of equitable estoppel generally is a factual question for the trier of fact to
28 decide, unless the facts are undisputed and can support only one reasonable conclusion as a

6

1  matter of law." *Schafer*, 237 Cal. App. 4th at 1263.

2  Comcast argues that Sierra's factual allegations amount to nothing more than Comcast's "promise" to "try" to resolve the matter. Doc. 7 at 7–8. Sierra's complaint alleges that Comcast spent two years implying that it needed more time to research the issue, and that after Sierra agreed to terminate the license agreements, Comcast assured Sierra that it was "prepared to observe and respect property rights" but needed additional information. Compl. ¶¶ 17–22. Sierra alleges that Comcast "continued to falsely promise that it was trying to resolve the dispute" and continued to request documentation or indicate that it needed to review additional documentation. *Id.* ¶ 24; Doc. 10 at 10. Sierra continued to provide the requested documentation while indicating in an October 2018 email that it was preparing to file a lawsuit. Compl. ¶ 24.

Sierra's complaint fails to sufficiently allege that equitable estoppel bars Comcast from invoking the statute of limitations as a defense. At most, Sierra alleges that it refrained from filing a lawsuit in reasonable reliance on Comcast's representations that it would try to resolve the dispute and on the parties' discussions through October 2018. *See id.* But the statute of limitations expired well after October 2018 and the complaint is devoid of factual allegations as to whether Comcast's conduct after October 2018 induced Sierra to refrain from filing a lawsuit. *See Boon Rawd Trading Int'l Co. v. Paleewong Trading Co.*, 688 F. Supp. 2d 940, 950 (N.D. Cal. 2010) (plaintiff could not assert equitable estoppel, in part, because plaintiff had the opportunity to bring a lawsuit within the limitations period when no negotiations were occurring).

Even assuming the limitations period began to accrue in March or April 2016, rather than in March 2015, Sierra would have had until no later than April 2020 to timely file its lawsuit.[2] The most recent email communication referenced in the complaint from Comcast's counsel, dated May 17, 2019, states that "Comcast is unable to identify any existing rail crossing locations, from the information Sierra Railway provided, where it requires a grant of rights from, or owes compensation to, Sierra Railway. So in that sense we are fine as-is." Doc. 1 at 41. That email communication does not suggest that Comcast was interested in further negotiating at that time.

---

[2] Sierra's letter terminating the license agreements, dated March 31, 2026, stated that Comcast had until April 24, 2016, to abide by its contractual termination duties. Doc. 1. at 37.

7

1　The parties' final communications occurred well within the statute of limitations period and
2　Sierra had ample time thereafter to timely bring a lawsuit.

3　　Sierra does not allege that Comcast told it not to file a lawsuit or made any promises to
4　Sierra to induce it to not move forward with its claims. "It is a general rule that a mere request
5　for delay, in the absence of a promise or agreement not to plead the statute of limitations, does not
6　estop one from asserting it." *U. S. Cas. Co. v. Indus. Acc. Comm'n*, 122 Cal. App. 2d 427, 433
7　(1954). Sierra merely claims that Comcast promised repeatedly to try to reach a resolution of the
8　dispute and repeatedly requested further information. Sierra's reliance on *Union Oil Co. of Cal.*
9　*v. Greka Energy Corporation*, 165 Cal. App. 4th 129 (2008), is unpersuasive. In *Union Oil*, the
10　defendant urged the plaintiff to withdraw its claims because of the defendant's new business
11　strategy, and its desire to amend the current agreements, and represented that a settlement would
12　be beneficial to the plaintiff. *Union Oil Co. of Cal.,* 165 Cal. App. 4th at 138. The plaintiff and
13　the defendant had several settlement meetings and the defendant promised to provide the plaintiff
14　with a written proposal for amending the agreements. *Id.* The plaintiff ultimately filed its lawsuit
15　after the defendant did not submit such proposal. *Id.* In these circumstances, the court held that
16　the defendant was estopped from asserting the statute of limitations as a defense because it urged
17　the plaintiff to suspend legal actions and the plaintiff relied on the defendant's promise to amend
18　the contracts. *Id.*

19　　Sierra does not identify any such conduct by Comcast. Sierra does not allege that
20　Comcast promised that a settlement was forthcoming if Sierra refrained from filing a lawsuit.
21　Nor does Sierra allege that Comcast misrepresented a fact central to its claims. At most, Sierra
22　alleges that Comcast indicated it would be interested in resolving the dispute but that it needed to
23　do further investigation. Such statements are insufficient to adequately establish equitable
24　estoppel. *See Lomeli v. Costco Wholesale Corp.*, No. 11-CV-2508-MMA KSC, 2012 WL
25　1378713, at *5 (S.D. Cal. Apr. 20, 2012) (defendant was not estopped from asserting a statute of
26　limitations defense because, even if defense counsel failed to timely return telephone calls or
27　timely communicate, defense counsel did not make misrepresentations or otherwise act to prevent
28　plaintiff from filing a lawsuit where defense counsel made a non-committal request to discuss

8

1  settlement and a possible tolling agreement).

2  **2. Sierra fails to sufficiently allege that the doctrine of continuous accrual applies.**

Alternatively, Sierra argues that its contract-based claims survive because there are continuing breaches of Comcast's surviving obligations to remove its facilities, pay the sums due under the contract, and not claim independent rights to Sierra's property. Doc. 10 at 11. The continuous accrual doctrine generally applies when there is a continuing or recurring obligation. *Aryeh v. Canon Bus. Sols., Inc.*, 55 Cal. 4th 1185, 1189 (2013). Under the theory of continuous accrual, "a cause of action accrues each time a wrongful act occurs, triggering a new limitations period." *Id.* at 1199. "Because each new breach of such an obligation provides all the elements of a claim—wrongdoing, harm, and causation . . . —each may be treated as an independently actionable wrong with its own time limit for recovery." *Id.* "[T]he theory of continuous accrual supports recovery only for damages arising from those breaches falling within the limitations period." *Id.* The doctrine of continuous accrual has been applied to installment contracts, leases with periodic rental payments, and other types of periodic contracts with no final or fixed amount. *Factory Direct Wholesale, LLC v. iTouchless Housewares & Prods., Inc.*, 411 F. Supp. 3d 905, 917 (N.D. Cal. 2019).

Sierra argues that each of the breached terms of the license agreements provides an ongoing obligation, notwithstanding that the license agreements do not contain a survival clause, because the parties intended that the breached terms would survive termination. Doc. 10 at 12. Sierra points to two sections of the license agreements: (1) Section 12.4, which provides that interest will accrue annually at 12% on unpaid sums, and (2) Section 14.1, which provides that the termination of the agreement "shall not affect any claims and liabilities which may have arisen or accrued hereunder, and which at the time of termination or revocation have not been satisfied, neither party, however, waiving any third party defenses or actions." Doc. 10 at 12; Doc. 1 at 29–30. Sierra argues that at the time of termination, Comcast owed more than $200,000 in unpaid rent and fees and that the amount owed has grown each year. Doc. 10 at 12. Because the amount continues to grow, Sierra asserts that the continuous accrual doctrine applies. *Id.*

Sierra relies on *Aryeh* to support its assertion that the continuous accrual doctrine applies.

9

Doc. 10 at 13. In *Aryeh*, the defendant billed the plaintiff on a recurring monthly basis and those bills included the alleged unlawful charges. *Aryeh*, 55 Cal. 4th at 1200. The court found that each time the defendant imposed an unfair charge in its bill to the plaintiff, each monthly bill was a new alleged breach triggering a new limitations period. *Id.* Here, unlike *Aryeh*, Sierra does not allege that it billed Comcast on a monthly or yearly basis after the termination of the licensing agreements.

The "accrual for periodic breach is to be distinguished from that of a single breach or other wrong which has continuing impact." *Armstrong Petroleum Corp. v. Tri-Valley Oil & Gas Co.*, 116 Cal. App. 4th 1375, 1389 (2004). In a letter dated March 31, 2016, Sierra's counsel informed Comcast's counsel that Comcast had "until the end of the day on April 24, 2016 (30 days from the date of Comcast's most recent termination letter) to remove its wirelines and equipment from our property and to restore our property to its pre-contract condition" and had until "April 24, 2016 [] to pay us all past-due amounts for its use of these crossings." Doc. 1 at 37. Thus, Sierra sought a lump sum payment for the alleged breach of the license agreement and for Comcast to remove its facilities from Sierra's property. Comcast's alleged failure to tender payment and failure to remove its facilities from Sierra's property is, at most, a continuing injury rather than a periodic breach. Sierra agreed that the license agreements were terminated by March 2016. That Comcast failed to timely pay the amounts due by April 2016, and that, had Sierra filed this action within the limitations period, it may have had a basis to seek interest on the outstanding sums owed, does not transform the obligations that arose from the termination into an installment or periodic contract. "[I]f continuing injury from a completed act generally extended the limitations period, those periods would lack meaning. Parties could file suit at any time, as long as their injuries persisted." *Vaca v. Wachovia Mortgage Corp.*, 198 Cal. App. 4th 737, 745 (2011); *see also Armstrong Petroleum Corp.*, 116 Cal. App. 4th at 1393 (differentiating the breach of a single obligation to repair, which could be a continuing injury, from a repeated, periodic breach of divisible obligations).

Thus, the continuous accrual doctrine does not save Sierra's first, second, or fifth causes of action, or the part of the sixth cause of action (for declaratory relief) predicated on those

underlying claims.[3]

### B. <u>Sixth Cause of Action</u>

Comcast also moves to dismiss the sixth cause of action for declaratory relief on the grounds that the claim is duplicative of its underlying causes of action. Doc. 7 at 6–7. Sierra's declaratory relief cause of action seeks relief based on its contract related claims and an abatement remedy based on its trespass and nuisance claims. Doc. 10 at 14–15. "The object of the [declaratory relief] statute is to afford a new form of relief where needed and not to furnish a litigant with a second cause of action for the determination of identical issues." *Hood v. Superior Ct.*, 33 Cal. App. 4th 319, 324 (1995). Where the issues are "fully engaged" in other causes of action, declaratory relief is "unnecessary and superfluous." *Id.* Because the relief that Sierra seeks in its declaratory relief cause of action is identical to the relief it seeks obtain in its underlying contract-related, trespass, and nuisance causes of action, the declaratory relief cause of action is redundant and constitutes a remedy rather than an independent cause of action. Accordingly, dismissal of the declaratory relief cause of action is appropriate. Leave to amend is granted to the extent that Sierra has a good faith basis to assert a claim for declaratory relief that it would not otherwise obtain from its other causes of action.[4]

## IV. LEAVE TO AMEND

Generally, "[c]ourts are free to grant a party leave to amend whenever 'justice so requires,' Fed. R. Civ. P. 15(a)(2), and requests for leave should be granted with 'extreme liberality.'" *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 972 (9th Cir. 2009). However, a court has discretion to deny leave to amend due to "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendment previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of

---

[3] To the extent Sierra alleges that Comcast continued to occupy its property, such injury is not grounded solely in the alleged breach of the license agreements. Rather, such alleged unauthorized occupation also relates to the trespass and nuisance claims (the third and fourth causes of action), which are not at issue in the motion to dismiss.

[4] The dismissal of this cause of action does not prevent Sierra from amending its complaint to explicitly list the remedies it seeks on its underlying claims.

amendment." *Leadsinger*, 512 F.3d at 532.

Sierra argues that granting leave to amend would not be futile and that it can adequately allege that equitable estoppel applies. As it is not clear that Sierra's attempt to amend would be futile, the Court will grant Sierra leave to amend its complaint.

## V. CONCLUSION

For the reasons explained above:

1. Comcast's motion to dismiss (Doc. 7) is granted.

2. Within twenty-one (21) days from the date of this Order, Sierra may file an amended complaint. If Sierra fails to timely file an amended complaint, this action will proceed solely on the remaining claims (causes of action three and four, for trespass and nuisance).

IT IS SO ORDERED.

Dated:   December 31, 2025

UNITED STATES DISTRICT JUDGE

12